# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————————

**No. 201700018**

———————————————

**UNITED STATES OF AMERICA**
Appellee

v.

**TAYLOR U. JONES**
Hospitalman (E-3), U.S. Navy
Appellant

———————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges: Captain Robert J. Crow, JAGC, USN.
Convening Authority: Commander, Navy Region Southeast, Jacksonville, FL.
Staff Judge Advocate's Recommendations: Lieutenant Medardo M. Martin, JAGC, USN.
For Appellant: Lieutenant Commander Jeremy J. Wall, JAGC, USN.
For Appellee: Captain Sean M. Monks, USMC; Lieutenant Megan P. Marinos, JAGC, USN.

———————————————

Decided 8 February 2018

———————————————

Before HUTCHISON, PRICE, and SAYEGH, *Appellate Military Judges*

———————————————

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————————

SAYEGH, Judge:

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of sexual assault of JB while she was asleep in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. The military judge sentenced the appellant to reduction to pay grade E-1, confinement for 18 months, and a dishonorable discharge. The

convening authority (CA) approved the sentence as adjudged and, except for the dishonorable discharge discharge, ordered it executed.

The appellant raises one assignment of error: the military judge abused his discretion by not dismissing the charge and specification or abating the proceedings for the government's failure to preserve two text messages on the victim's cell phone that were of apparent exculpatory value and of central importance to the defense.

After careful consideration of the record of trial and the parties' pleadings, we conclude the findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

In 2014, the appellant and JB were "C" school classmates. The appellant was convicted of sexually assaulting JB in a hotel in San Antonio, Texas, on 23 August 2014. JB alleged that after a night of heavy drinking she awoke with the appellant on top of her engaged in sexual intercourse. After maneuvering herself away from the appellant, JB quickly got dressed and left the hotel room where the sexual assault had just occurred. She went to the lobby and exited the hotel to find a cab. On the ride home, JB sent a group text to her friend Hospitalman (HN) RA, whose birthday party she had attended at a bar on the evening of 23 August, and another friend who was then in Italy.[1] In this text, JB said, "F***, mistake, all a mistake."[2] Approximately two and one-half hours later, JB sent HN RA another text stating, "I should have stayed at [the bar] with you all until I got kicked out."[3]

On 23 August 2014, JB reported to the San Antonio Police Department (SAPD) that she was sexually assaulted by the appellant. On 25 August 2014, SAPD conducted a video-recorded interview with JB. During this interview, JB read aloud the two text messages she sent to HN RA from her cell phone after the alleged sexual assault. The Naval Criminal Investigative Service (NCIS) subsequently assumed investigative jurisdiction of the case and NCIS Special Agent (SA) B. re-interviewed JB, who again mentioned the text messages. SA B. attempted, but was unable, to retrieve the text messages from JB's cell phone. SA B. did make photographic copies of other text messages sent close in time to the incident, but not the two aforementioned

---

[1] Record at 486-89. No investigation efforts were made to speak with or obtain cell phone records from the friend in Italy. *Id.* at 66.

[2] *Id.* at 493.

[3] *Id.* at 493-95.

messages sent by JB to HN RA, testifying that those messages had been deleted.[4] In May 2016, the appellant requested the government produce these text messages, but the request was denied because JB no longer had the same cell phone and the government had not otherwise preserved them.

At trial, the appellant moved pursuant to RULE FOR COURTS-MARTIAL (R.C.M.) 701(g)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) to dismiss the charge and specification with prejudice due to the government's violation of R.C.M. 701 and 703, and *Brady v. Maryland*, 373 U.S. 83 (1963). Following an Article 39(a), UCMJ, motions hearing, the military judge denied the motion.[5] After the appellant presented additional evidence that JB did not delete the text messages before meeting with NCIS on 15 September 2014,[6] the military judge agreed to reconsider his previous ruling but ultimately again denied the appellant's motion.[7]

## II. DISCUSSION

We review a military judge's trial ruling on a motion to dismiss for abuse of discretion. *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004). An abuse of discretion occurs when a court's findings of fact are clearly erroneous or the decision is influenced by an erroneous view of the law. *United States v. Lubich*, 72 M.J. 170, 173 (C.A.A.F. 2013). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citations and internal quotation marks omitted). "[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *Gore*, 60 M.J. at 187 (citing *United States v. Wallace*, 964 F.2d 1214, 1217 n.3 (D.C.Cir. 1992).

The appellant alleges the military judge abused his discretion by not dismissing or abating the case "after it became clear NCIS failed to make even cursory efforts to preserve important evidence."[8] We disagree. Although the two text messages were relevant and necessary to the appellant's defense, we find that there was an "adequate substitute for such evidence" that ensured the appellant had a fair trial.[9]

---

[4] *Id.* at 45.

[5] *Id.* at 107.

[6] Appellate Exhibit (AE) XVI at 6.

[7] Record at 642.

[8] Appellant's Brief of 20 Jun 2017 at 8.

[9] R.C.M. 703(f)(2).

The government has no explicit requirement to preserve evidence. *United States v. Stellato*, 74 M.J. 473, 483 (C.A.A.F. 2015). However, Article 46, UCMJ, requires that the defense have equal opportunity to obtain exculpatory evidence. *United States v. Kern*, 22 M.J. 49, 51 (C.M.A. 1986). R.C.M. 703(f) sets forth the criteria and process a military judge must follow in deciding whether an accused is entitled to discovery relief and what type of relief may be given. R.C.M. 703(f)(1) states: "Each party is entitled to the production of evidence which is relevant and necessary." However, R.C.M. 703(f)(2) states that despite the broad rule in R.C.M. 703(f)(1):

> [A] party is not entitled to the production of evidence which is destroyed, lost, or otherwise not subject to compulsory process. However, if such evidence is of such central importance to an issue that it is essential to a fair trial, and if there is no adequate substitute for such evidence, the military judge shall grant a continuance or other relief in order to attempt to produce the evidence or shall abate the proceedings, unless the unavailability of the evidence is the fault of or could have been prevented by the requesting party.

We begin our review by determining whether the military judge's analysis reasonably arose from his findings of fact.[10] We find support for these findings of fact in the record, do not find them to be clearly erroneous, and adopt them. We next look to see whether the military judge properly interpreted R.C.M. 703(f)(2). The military judge applied a five-part test derived from R.C.M. 703 and set out in *United States v. Smith,* 2015 CCA LEXIS 40 at *8, unpublished op. (N-M. Ct. Crim. App. 10 Feb 10, 2015) (per curiam), which is consistent with *Stellato*:

> Therefore, to be entitled to relief under R.C.M. 703(f)(2), an accused must show: (1) the evidence is relevant and necessary; (2) the evidence has been destroyed, lost, or otherwise not subject to compulsory process; (3) the evidence is of such central importance to an issue that it is essential to a fair trial; (4) there is no adequate substitute for such evidence; and (5) the accused is not at fault or could not have prevented the unavailability of the evidence.

The record establishes, and the appellant does not challenge, the military judge's rulings with regards to prongs (2) and (5). In addressing the remaining prongs, the military judge determined that the two text messages were not relevant, necessary, or exculpatory evidence essential to the appellant having a fair trial, and even if they were, they were available to the

---

[10] *See* AE XXXV.

appellant through other adequate means.[11] Contrary to the military judge's ruling, we find the two text messages were relevant and necessary to the appellant's defense as evidence that sexual activity with the appellant may have been consensual and that JB may have regretted engaging in a sexual act with the appellant. However, that does not end our analysis as we must still determine whether an adequate substitute for the text messages was available.

At appellant's trial, his civilian defense counsel objected to the admission of testimony regarding both texts.[12] The military judge only admitted testimony regarding the first text stating "F***, made a mistake. All a mistake." into evidence.[13] We find that a variety of comparable substitutes for that text message was available to the appellant. The SAPD video of JB's interview, which includes JB reading the text to investigators, provided the appellant sufficient understanding of what the text said and how the government was going to use it at trial. Additionally, the testimony of JB, HN RA, SA B. and the other NCIS and SAPD investigators provided an adequate substitute for the appellant to impeach JB or confront her and HN RA about the text. The appellant was also able to argue how it supported the defense theory of the case:

> Then you have when she leaves the room, Your Honor, "This isn't me. This isn't me." "F***, I made a mistake, all a mistake." "Everyone wants to be with me, but I don't want to be with them." So what do you do with that? What you don't have, Your Honor, is "I just got attacked." What you don't have, Your Honor, is "I just got attacked and it was HN Jones." What you don't have is "I woke up and someone is having sex with me, and I don't know right now who it is."[14]

Through these witnesses, the video, and argument, the appellant had what was essential to put on a defense, and thus a fair trial in this case.

---

[11] AE XXXV.

[12] Record at 487.

[13] *Id.* at 493-94. The military judge sustained the defense objection to testimony regarding the second text because JB testified the second text was sent later and the military judge determined it was not an excited-utterance. *Id.* at 495.

[14] *Id.* at 707.

The military judge also conducted a separate analysis addressing the government's duty to preserve evidence under the constitutional due process standard.[15] Due process requires the government to preserve evidence with: (1) apparent exculpatory value before it is lost and, (2) that "[the evidence] be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984). However, the failure to preserve "potentially useful evidence" is only a violation of due process if there is a showing of bad faith by law enforcement, otherwise the fact such evidence is lost or destroyed does not constitute a denial of due process. *United States v. Simmermacher,* 74 M.J. 196, 199 (C.A.A.F. 2015) (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)). But this exception is not without limitations and is "'generally limited in its application.'" *United States v. Muwwakkil*, 74 M.J. 187, 193 (C.A.A.F. 2015) (quoting *United States v. Jarrie*, 5 M.J. 193, 195 (C.M.A. 1978)).

In September 2014, SA B. attempted to extract the text messages off of JB's cell phone and confirmed that HN RA no longer had them. SA B. photographed and documented the text messages between JB and four other witnesses but did not photograph the text messages between JB and HN RA. SA B. testified that she recalls she was unable to retrieve those two texts because they were "deleted."[16] Although SA B.'s testimony is controverted with JB's claims she did not delete the texts,[17] the record does not support finding that SA B. acted intentionally or willfully in failing to retrieve or photograph the two text messages. As discussed *supra,* regardless of whether or not the two text messages had potential exculpatory value or were potentially useful to the appellant, they were available to him through other adequate means.

We find nothing in the record to suggest that NCIS' failure to retrieve or photograph the two text messages was willfull or as a result of bad faith. Therefore, despite the government's inability to produce the  two text messages JB sent to HN RA, the military judge did not abuse his discretion in denying the appellant relief under R.C.M. 703 or the constitutional due process standard.

---

[15] AE XXXV at 11.

[16] Record at 45.

[17] AE XVI at 6. In an email to her victim's legal counsel, JB indicated that NCIS did attempt to photograph the text message she sent to HN RA.

### III. CONCLUSION

The findings and sentence, as approved by the CA, are affirmed.

Senior Judge HUTCHISON and Judge PRICE concur.

For the Court

R.H. TROIDL
Clerk of Court