# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant NORMAN L. CLARK, SR.**
**United States Army, Appellant**

ARMY 20170023

Headquarters, Fort Campbell
Matthew A. Calarco, Military Judge
Colonel Susan K. Arnold, Staff Judge Advocate

For Appellant: Lieutenant Colonel Christopher D. Carrier, JA (argued); Lieutenant Colonel Todd W. Simpson, JA; Lieutenant Colonel Christopher D. Carrier, JA (on brief and brief on specified issue).

For Appellee: Captain Meredith M. Picard, JA (argued); Lieutenant Colonel Eric K. Stafford, JA; Major Hannah E. Kaufman, JA; Captain Meredith M. Picard, JA (on brief); Lieutenant Colonel Eric K. Stafford, JA; Captain Meredith M. Picard, JA (on brief on specified issue).

10 June 2019

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Judge:

Following his convictions for raping and sexually assaulting his biological four-year-old daughter, AC, appellant asserts the military judge erred in failing to strike the testimony of two Criminal Investigation Command (CID) Special Agents (SAs) under Rule for Courts-Martial [R.C.M.] 914. Even if the military judge erred in his analysis of R.C.M. 914 by failing to strike the SAs' testimony, any alleged error did not materially prejudice appellant's substantial rights.

A panel of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of false official statement, one specification of rape of a child, and one specification of sexual

assault of a child, in violation of Articles 107 and 120b, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 920b (2012) [UCMJ]. The convening authority approved the panel's adjudged sentence of a dishonorable discharge, confinement for twelve years, total forfeiture of all pay and allowances, and reduction to the grade of E-1.

This case is before us under Article 66, UCMJ. Appellant raises one assignment of error which warrants discussion but no relief.

## BACKGROUND

This case started when AC complained of vaginal pain in the form of a rash and a burning sensation during urination. At a medical appointment to treat AC's vaginal pain, a pediatric nurse observed vesicles (fluid filled blisters) on the inside of AC's *labia majora*.[1] Testing of these vesicles revealed AC had contracted a form of genital herpes, Herpes Simplex Virus Type-2 (HSV-2), a viral infection. HSV-2 genital herpes is contracted when a person's genitalia makes direct physical contact with an infected person's mouth, genital tract, or anus. AC's treating pediatrician testified "a preadolescent female, not sexually active female, would obtain or contract genital herpes . . . in some non-innocent sexual way . . . ."

An investigation commenced to determine the infected person who sexually engaged with AC, causing her to contract HSV-2 genital herpes and manifest vesicles on the inside of her *labia majora*. This court-martial commenced after appellant tested positive for HSV-2 genital herpes and confessed to CID agents to raping and sexually assaulting AC. Appellant's sole assignment of error involves his confession to CID agents during the course of two separate interviews conducted on back-to-back days.

On the first day, appellant waived his rights, engaged in a lengthy interview with CID agents, and made several incriminating admissions. On the second day, appellant voluntarily returned to the CID office, again waived his rights, and confessed, in the beginning of the interview, to penetrating AC with his penis to the depth of his fingernail. Appellant stated AC was too tight for him to enter further so he thrust his penis between her legs until he ejaculated.

Appellant's two interviews were video recorded by CID using a case tracker system. After an interview, an agent must download a video recording from the case tracker system onto a digital media disc to preserve the interview. The first day's interview comprised three discs [Discs 1, 2, and 3] and the second day's interview

---

[1] The *labia majora* is defined as "the outer fatty folds bounding the vulva." Webster's Third New International Dictionary 1259 (2002).

comprised two discs [Discs 4 and 5]. At the time of downloading, the CID agents believed Disc 4 and Disc 5 contained the entire interview from day two. Several months after appellant's interviews, CID agents discovered the contents of Disc 4 actually depicted the beginning of the day one interview, as opposed to the beginning of the day two interview where appellant confessed to penetrating AC. The failure to adequately copy and preserve Disc 4 underlies appellant's alleged R.C.M. 914 error.

Upon learning about the problems with Disc 4, the defense first filed a motion under R.C.M. 703 to abate the proceedings.[2] A lengthy motion hearing ensued to determine if such a Disc 4 existed, the efforts CID agents took to find such a disc, and, in the absence of any such disc, the actual nature and contents of the beginning of the day two interview. The military judge made detailed written findings of fact and conclusions of law on the R.C.M. 703 motion, which are fully supported by the record, determining that CID failed to preserve a Disc 4 depicting the beginning of the day two interview. We now pause to highlight the relevant portions of the military judge's ruling.[3]

The military judge found "[d]espite relatively exhaustive efforts to locate . . . [a disc depicting the beginning of the day two interview], to include searching every file in the office and examining other copies that should have been duplicates of the [disc] . . . that [portion of the] interview was never recovered." Having determined that portion of the interview no longer existed, the military judge next made findings of fact regarding the nature of the lost evidence.

Four CID agents and one military special victim prosecutor, Lieutenant Colonel (LTC) JB, testified that, at the beginning of the day two interview, appellant

---

[2] While an accused is not entitled to production of evidence that is lost or destroyed, Rule for Court-Martial 703(f)(2) provides:

> [i]f such evidence is of such central importance to an issue that it is essential to a fair trial, and if there is no adequate substitute for such evidence, the military judge shall grant a continuance or other relief in order to attempt to produce the evidence or shall abate the proceedings, unless the unavailability of the evidence is the fault of or could have been prevented by the requesting party.

[3] Although the military judge's written ruling involved the defense motion to compel discovery, the military judge later adopted, with the parties' consent, his findings of fact and conclusions of law from the R.C.M. 703 ruling for his R.C.M. 914 ruling.

confessed to inserting his penis into AC's vagina and ejaculating. The witnesses testified that appellant stated he was "fishing" between AC's legs and buttocks as he tried to insert his penis into what he called his daughter's "pussy." The witnesses confirmed that appellant waived his rights, voluntarily spoke to the agents, received multiple breaks and food, and did not receive any threats or promises from CID. The defense presented no witnesses during the motion hearing to contradict the government witnesses' testimony as to appellant's incriminating statements or his treatment during the interview.[4]

When questioned regarding any possible CID motivation for losing the disc, LTC JB stated:

> [I]f there was a worse DVD for CID to lose, if you will, this would be it. I mean, there's absolutely nothing on this DVD that painted CID in a bad light, whatsoever. There's absolutely no reason for any agent to want to get rid of it or not to produce it because there was . . . nothing exculpatory on it, it was all inculpatory in detailing what he had done to his daughter. So there would absolutely be no reason for an agent to try to get rid of it, I mean, there had been multiple attorneys there watching.

The military judge denied the defense motion to abate the proceedings because of the lost disc.[5] While this ruling could have been the culmination of any further litigation regarding the lost disc at the trial level, the government opened the door to a defense motion under R.C.M. 914 when two SAs testified as to comments they made to appellant from the beginning of the day two interview. The defense moved to strike their testimony under R.C.M. 914. The military judge denied the defense R.C.M. 914 motion holding that the comments of the agents from the beginning of the day two interview were not "statements" for purposes of R.C.M. 914.

---

[4] Appellant testified for the first time during the defense case-in-chief on the merits that he was, as stated in his appellate brief, allegedly "cajoled, hectored, or induced" by CID agents to confess to penetrating AC. We note the defense never filed any motion to suppress appellant's statements as involuntarily or otherwise inappropriately obtained during either of the two interviews. Having closely reviewed Discs 1, 2, 3, and 5, we do not find evidence of alleged cajoling, hectoring, or inducement by CID agents during appellant's interviews that precipitated appellant's admissions to engaging in sexual activity with AC.

[5] Appellant does not challenge this ruling on appeal.

4

**LAW AND DISCUSSION**

We review a military judge's decision to strike testimony under R.C.M. 914 using an abuse of discretion standard. *United States v. Muwwakkil*, 74 M.J. 187, 191 (C.A.A.F. 2015) (citations omitted). An abuse of discretion occurs when the military judge's "findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015) (citations omitted).

At bar, the military judge found the comments by the SAs during the beginning of the day two interview did not constitute "statements" for the purposes of R.C.M. 914. Although the military judges' analysis is likely erroneous as a matter of law based on the broad definition of "statement" under R.C.M. 914, we need not ultimately decide this issue. As discussed in Section B, below, any alleged error in not striking the SAs' testimony did not materially prejudice a substantial right of appellant under Article 59, UCMJ.[6]

*A.  Good Faith and Harmless Error under R.C.M. 914*

Rule for Court-Martial 914 states "[a]fter a witness other than the accused has testified on direct examination, the military judge" upon motion of the opposing party shall order the production of "any statement of the witness that relates to the subject matter concerning which the witness has testified  . . . ." R.C.M. 914(a). A "statement" is defined, in part, as "[a] substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and contained in a[n] … electrical, or other recording . . . ." R.C.M. 914(f)(2). If the witness' statement is not provided to the opposing party, "the military judge shall order that the testimony of the witness be disregarded by the trier of fact and that the trial proceed, or, if it is the trial counsel who elects not to comply, shall declare a mistrial if required in the interest of justice." R.C.M. 914(e).

"Although not expressly mentioned [in R.C.M. 914(e)] the good faith loss and harmless error doctrines under the Jencks Act would apparently apply."[7]  Rule

---

[6] While there are two remedies under R.C.M. 914, the defense only requested striking the SAs' testimony.

[7] The Jencks Act, 18 U.S.C. § 3500, arose following the Supreme Court's decision in *Jencks v. United States*, 353 U.S. 657 (1957). The Act requires a judge, upon defense motion, to compel the government to provide a witness's prior statements related to the subject matter of the testimony provided by the witness on direct

(continued . . .)

for Court-Martial 914(e) analysis at A21-65.  *See also United States v. Marsh*, 21 M.J. 445, 451 (C.M.A. 1986) (recognizing "[t]he Supreme Court has indicated on several occasions that good-faith loss . . . may not require the same sanction required for deliberate suppression or for bad-faith destruction [of a statement].");  *United States v. Jarrie*, 5 M.J. 193, 195 (C.M.A. 1978) (finding a good faith exception is "generally limited in its application").

Because the military judge denied the defense motion by finding R.C.M. 914 inapplicable, he did not expand his ruling to consider whether these good faith and harmless error doctrines applied.  His ruling, however, is replete with findings of fact and conclusions of law as to the government's acts and the weight of the lost evidence, which appear to present a narrow set of circumstances upon which the "generally limited" good faith doctrine may have applied.  Although we do not decide this case based on a good faith doctrine analysis, the military judge's relevant findings aid our Article 59, UCMJ analysis.

First, the military judge found:  (1) "no evidence of bad faith on the part of any government actor either before or after the evidence was lost;" (2) that the defense "presented . . . no actual evidence of [any] exculpatory value" existing on the lost disc; and (3) "the lost evidence contain[ed] the accused' own inculpatory statements."

The military judge, as did this court, reviewed all remaining interview discs (Discs 1, 2, 3 and 5) which were admitted at trial.  During the day one interview (Discs 1, 2, and 3), appellant admitted to snuggling in bed with AC and awakening with an erection on two or three occasions, and he noticed a wet spot on the bed which appeared to be his ejaculate on one of these occasions.  During the day two interview (Disc 5), appellant described additional sexual acts of rubbing his erect penis on AC's buttocks over her clothes and putting his penis between her legs, but he was unsure if he achieved penetration.  The four combined discs contain appellant's detailed description of egregious sexual acts between himself and his daughter.

The military judge, as did we, also observed in Disc 5 appellant referencing comments he made earlier in the beginning of the day two interview concerning his sexual abuse of AC (comments that would have been on the lost Disc 4).  As shown on Disc 5, and noted by the judge, appellant referenced "an event they had already

---

(. . . continued)
examination.  Rule for Court-Martial 914 follows the language of the Jencks Act, but extends to disclosure of the statements of defense witnesses other than those provided by the accused.  *See Muwwakkil*, 74 M.J. at 190; R.C.M. 914(a)(2).

discussed earlier in the interview, the event where he admitted to penetrating AC's vagina with his penis . . . ."

### B. *Article 59, UCMJ Analysis*

Assuming the military judge abused his discretion by incorrectly interpreting the meaning of "statement" under R.C.M. 914, the question becomes whether we can test this error for prejudice under Article 59, UCMJ. Appellant, citing *United States v. Muwwakkil*, argues that this court is constrained in responding to the military judge's error by the remedies provided in R.C.M. 914; since neither remedy was provided, the argument follows, we must therefore set aside the findings of guilty and sentence. We disagree.

In *Muwwakkil*, our superior court noted that the plain text of R.C.M. 914 provided two remedies for noncompliance without referencing a predicate finding of prejudice or harmless error at the trial stage. 74 M.J. at 194. The Court of Appeals for the Armed Forces (CAAF) reasoned "[a]bsent any reference to prejudice or harmless error, at [the trial stage] of the proceedings . . . the military judge was not required to engage in a prejudice analysis." *Id.* Defense argues this language should be interpreted to mean that this court should not engage in a prejudice analysis regarding a potential R.C.M. 914 error. We do not read *Muwwakkil* so narrowly. Although the CAAF states such an analysis is "not required" by a trial judge, the CAAF does not state such analysis by a trial judge is prohibited and, more importantly, this language does not address the authority of an appellate court under Article 59, UCMJ. We further highlight *Muwwakkil's* limited applicability to our current case. As the CAAF recognized, *Muwwakkil* was an Article 62, UCMJ, appeal in which the judge granted a defense motion to strike testimony under R.C.M. 914, resulting in an abated trial, as opposed to an appeal following a complete trial. *Id.* at 194 n.4. Appellant's case involves an Article 66, UCMJ, appeal of a completed trial in which the military judge denied the defense motion to strike testimony.

Applying an Article 59, UCMJ prejudice analysis is not only compatible with *Muwwakkil*, but also comports with United States Supreme Court precedent regarding *Jencks Act* violations. *See United States v. Goldberg*, 425 U.S. 94 (1976). As stated by CAAF "[g]iven the similarities in language and purpose between R.C.M. 914 and the Jencks Act, we conclude that . . . Supreme Court [case law] informs our analysis of R.C.M. 914 issues." *Muwwakkil*, 74 M.J. at 191.

In *Goldberg*, the Supreme Court remanded the case to the trial level to conduct a prejudice analysis regarding a potential Jencks Act violation. *Id.* at 111. Initially, the trial judge denied a defense motion to produce a prosecutor's written notes of a witness statement as privileged attorney work product. *Id.* at 101. After the judge's ruling the trial continued and concluded in a criminal conviction. The

Supreme Court overruled the trial judge as to his reasoning for denying the defense motion on the basis of the attorney work product privilege, but remanded the case for the judge to determine if the notes should have been otherwise provided to the defense, and if yes, whether such error was harmless in light of the fully complete trial. *Id.* at 111-12. ("[I]f the [trial judge] concludes that the Government should have been required to deliver the material, or part of it, to petitioner, and that error was not harmless, the [judge] will vacate the judgement of conviction and accord petitioner a new trial.").

Article 59(a), UCMJ, provides "a finding and sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." For nonconstitutional evidentiary error the test for prejudice "is whether the error had a substantial influence on the findings." *United States v. Fetrow*, 76 M.J. 181, 187 (C.A.A.F. 2017) (quoting *United States v. Gunkle*, 55 M.J. 26, 30 (C.A.A.F. 2001). "We evaluate prejudice from an erroneous evidentiary ruling by weighing (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999) (citation omitted).

Looking specifically at this fully complete trial, appellate defense counsel conceded during oral argument that appellant's R.C.M. 914 motion at trial applied only to the comments contained on the lost Disc 4. The admissions by appellant during this portion were perhaps the most damning, and thus were clearly material. However, even if we struck the two CID SAs' testimony regarding the beginning of the day two interview, the following government evidence remains from appellant's fully complete trial: (1) appellant's admissions as to his sexual acts against AC on Discs 1, 2, 3, and 5; (2) appellant's testimony at trial where he admitted he told the SAs during the day two interview that he penetrated AC's vagina with his penis; (3) AC and appellant's HSV-2 genital herpes positive status; and (4) the medical expert testimony as to the sexual activity required to contract HSV-2 genital herpes.

Together, even without the testimony as to the portions of the interview covered by Disc 4, the government presented an overwhelming case as to appellant's guilt. By contrast, the defense case was weak. Appellant's testimony and his claims as to why he made admissions to CID are simply incredible. The remainder of the defense's case was equally unpersuasive.

After review of the entire record, all the properly admitted and highly inculpatory government evidence leads us to the conclusion that any potential error in not striking the two SAs' testimony regarding the comments from the lost Disc 4

did not have a substantial influence on the findings. We therefore find any error in the admission of testimony concerning that portion of appellant's interview covered by Disc 4 harmless.[8]

## CONCLUSION

The findings of guilty and sentence are AFFIRMED.

Senior Judge BURTON and Judge HAGLER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[8] Even if we considered this a constitutional error, we would still affirm the findings of guilty and sentence. "A constitutional error is harmless when it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Chisum*, 77 M.J. 176, 179 (C.A.A.F. 2018) (citation omitted). "To say that an error did not 'contribute' to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial later held to have been erroneous, but rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Id.* (internal quotation marks omitted) (citation omitted). In addition to the factors already noted, to include the strength of the government's case, we also consider defense counsel's robust cross-examination of the SAs concerning their interview techniques and the cumulative nature of appellant's other admissions during the interview captured on the remaining discs. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). The testimony as to appellant's statements contained on Disc 4, on balance with the other evidence presented at trial, was unimportant to the outcome of the case. We are convinced beyond a reasonable doubt that this testimony did not contribute to the findings of guilty.