*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

**UNITED STATES**
Appellee

**v.**

**Jesse M. THOMPSON, Sergeant First Class**
United States Army, Appellant

**No. 21-0111**

Crim. App. No. 20180519

Argued May 25, 2021—Decided August 9, 2021

Military Judges: Fansu Ku (arraignment) and
Christopher E. Martin (trial)

For Appellant: *Captain Thomas J. Travers* (argued); *Colonel Michael C. Friess, Lieutenant Colonel Angela D. Swilley, Major Kyle C. Sprague*, and *Captain Lauren M. Teel* (on brief).

For Appellee: *Major Anthony A. Contrada* (argued); *Colonel Steven P. Haight, Lieutenant Colonel Wayne H. Williams*, and *Major Brett A. Cramer* (on brief).

Judge SPARKS delivered the opinion of the Court, in which Judge MAGGS and Judge HARDY, and Senior Judge STUCKY, joined. Chief Judge OHLSON filed a separate opinion concurring in the result.

———————————

Judge SPARKS delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted Appellant, pursuant to his plea, of adultery, in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2012). Contrary to his plea, Appellant was convicted of solicitation of production of child pornography, in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2012). The military judge sentenced Appellant to a bad-conduct discharge and confinement for twenty-four months. The United States Army Court of Criminal Appeals affirmed the findings and sentence as approved by the convening authority. *United States v. Thompson*, No. ARMY 20180519, 2020 CCA LEXIS 420, at *9, 2020 WL 6899432, at *4 (A. Ct. Crim. App. Nov. 23, 2020) (unpublished).

We granted review to determine whether the military judge abused his discretion in failing to strike the victim's testimony under Rule for Courts-Martial (R.C.M.) 914. R.C.M. 914 requires the government to make available to the defense, after a witness has testified, any statement possessed by the United States that the witness has made. We conclude that the military judge did not abuse his discretion when he denied Appellant's R.C.M. 914 motion because the United States was not in possession of the alleged statement.

## Background

In 2009, DS was approximately thirteen or fourteen years old when she first met Appellant, who was her uncle by marriage. In 2012, Appellant began sending DS Facebook messages complementing her looks. Their messaging progressed into daily Skype chats which were sexual in nature.

In 2015, the Federal Bureau of Investigation (FBI) began investigating Appellant after DS's mother, MC, reported that she had discovered nude photographs of DS and Appellant on DS's iPad. After the FBI's investigation had progressed for more than a year, Appellant's case was transferred to the Army Criminal Investigation Command (CID).

During the investigation, DS had difficulty remembering the dates of her in-person interactions with Appellant due to the passage of time. In order to help DS remember, she and her mother created a written time line, using Facebook and MC's calendar, identifying the dates of DS's in-person interactions with Appellant. MC testified to the creation of the time line as follows:

> We talked about the relationship and things that had happened. [DS] could not remember the timeline very well. We looked through Facebook and said, "Oh, there was the visit"—we didn't remember what year family Christmas of 2012 was, so we did go back and look at, this was 2012 when this happened. "Oh yeah, the wedding was 2011. Oh, yeah, the first time we met was 2010." We did not remember those dates, so we did have to go back and find them out.

DS had the time line in her pocket when she was interviewed by CID. The following colloquy during the interview took place:

> [CID Investigator]: Now you said you brought some —or you had some notes or something written down or something like that, dates and all that kind of stuff.
>
> [DS]: Yeah. I have it.
>
> [CID Investigator]: Have we pretty well covered most of that already?
>
> (pause)
>
> [DS]: Um, yeah. We covered when I first – when I first met him. But, I mean, I have specific dates if you want those. I couldn't remember them off the top of my head, but if you want them.
>
> [CID Investigator]: It's okay.
>
> [DS]: But we covered pretty much the—
>
> [CID Investigator]: And it—the specific dates, um, the only one that you're really confident of is the—
>
> [DS: March 8th.
>
> [CID Investigator]: —is the March 8th. Okay. All right. And the other ones, you're not a hundred percent on, but you kind of have an idea of the timeframe. Is that right?
>
> [DS]: Yeah. I wouldn't be able to remember them off the top of my head, but, um, whenever I—how I got those dates were just from pictures that we had taken on those different times.
>
> [CID Investigator]: Okay. Okay. And you—where are those pictures now?
>
> [DS]: They're probably on Facebook.
>
> [CID Investigator]: Okay. All right. Um, okay. So that's something I can probably get from you at a later time?
>
> [DS]: Yeah
>
> [CID Investigator]: Okay.
>
> [DS]: Yeah.

The CID Investigator did not collect the time line from DS during or after the interview. DS subsequently lost the time line.

After DS testified on direct at Appellant's court-martial, trial defense counsel moved to strike DS's trial testimony under R.C.M. 914 because the Government could not produce the lost time line. The military judge denied the R.C.M. 914 motion finding: (1) the time line was not a statement as it was not signed, adopted, or otherwise approved, nor intended to transmit information; (2) the time line was not in the possession of the United States; (3) the Government had not acted in bad faith or was not grossly negligent in losing the time line; and (4) it was unclear if the time line related to the subject matter of DS's testimony.

On appeal, Appellant argued the military judge erred in denying his R.C.M. 914 motion. *Thompson*, 2020 CCA LEXIS 420, at *4–5, 2020 WL 6899432, at *3. The lower court concluded that the military judge had not abused his discretion because the time line did not qualify as an R.C.M. 914 statement and it was not in the possession of the United States. *Id.* at *6–9, 2020 WL 6899432, at *3–4. On the latter point, Appellant argued that while the time line was never in the Government's actual possession, it was in the Government's constructive possession because DS had offered the time line to CID. *Id.* at *8, 2020 WL 6899432, at *4. The lower court disagreed finding there had to be a joint law enforcement investigation between federal and state authorities for constructive possession to apply under R.C.M. 914. *Id.* at *8–9, 2020 WL 6899432, at *4.

**Discussion**

Appellant argues that the military judge abused his discretion in denying his R.C.M. 914 motion because the time line: (1) was a statement; (2) was in the constructive possession of the United States; (3) related to DS's testimony; and (4) was not lost in good faith.

We review a military judge's ruling on a R.C.M. 914 motion for an abuse of discretion. *United States v. Clark*, 79 M.J. 449, 453 (C.A.A.F. 2020). "An abuse of discretion occurs when a military judge's findings of facts are clearly erroneous or his conclusions of law are incorrect." *Id.*

R.C.M. 914(a) states:

> After a witness other than the accused has testified on direct examination, the military judge, on motion of a party who did not call the witness, shall order the party who called the witness to produce, for examination and use by the moving party, any statement of the witness that relates to the subject matter concerning which the witness has testified, and that is:
>
> (1) In the case of a witness called by the trial counsel, in the possession of the United States; or
>
> (2) In the case of a witness called by the defense, in the possession of the accused or defense counsel.

The Jencks Act requires the trial judge, upon motion by the accused, to order the government to disclose prior "statement[s]" of its witnesses that are "relate[d] to the subject matter" of their testimony after each witness testifies on direct examination. 18 U.S.C. § 3500(b). "In 1984, the President promulgated R.C.M. 914, and this rule 'tracks the language of the Jencks Act, but it also includes disclosure of prior statements by defense witnesses other than the accused.'" *United States v. Muwwakkil*, 74 M.J. 187, 190–91 (C.A.A.F. 2015) (citation omitted). "Given the similarities in language and purpose between R.C.M. 914 and the Jencks Act, we have conclude[ed] that our Jencks Act case law and that of the Supreme Court informs our analysis of R.C.M. 914 issues." *Id.* at 191.

If the government, as the opposing party, fails to produce a qualifying statement, R.C.M. 914(e) provides the military judge with two remedies for the government's failure to deliver the qualifying statement: (1) "order that the testimony of the witness be disregarded by the trier of fact" or (2) "declare a mistrial if required in the interest of justice." When the military judge errs in denying a R.C.M. 914 motion, we determine whether this error prejudiced Appellant based on the nature of the right violated. *Clark*, 79 M.J. at 454.

Not every failure to produce a qualifying statement invokes a R.C.M. 914 remedy. Both the Supreme Court and this Court "have indicated that good faith loss or destruction of Jencks Act material and R.C.M. 914 material may excuse

the government's failure to produce 'statements.' " *Id.* (citing *Muwwakkil*, 74 M.J. at 193; *United States v. Augenblick*, 393 U.S. 348, 355–56 (1969)). "A finding of sufficient negligence may serve as the basis for a military judge's conclusion that the good faith loss doctrine does not apply." *Id.* (citing *Muwwakkil*, 74 M.J. at 193).

The relevant language of R.C.M. 914 requires the government to produce any pertinent statement of a prosecution witness "in the possession of the United States." R.C.M. 914 (a)(1). R.C.M. 914 does not apply if the statement is not in the possession of the United States. R.C.M. 914 concerns preservation and disclosure of statements in the government's possession, not the collection or creation of evidence. Here, law enforcement chose not to take possession of DS's time line. This decision did not violate R.C.M. 914 because there was no obligation for CID to create an R.C.M. 914 qualifying statement during its interview of DS. *See United States v. Bernard*, 625 F.2d 854, 859–60 (9th Cir. 1980) (rejecting a claim that the government is required to create Jencks Act material by recording everything a potential witness says); *United States. v. Martinez-Mercado*, 888 F.2d 1484, 1490 (5th Cir. 1989) (the government is not required to develop potential Jencks Act statements by demanding that its witnesses reduce to writing every matter about which they intend to testify at trial; rather, the government is obligated to reveal to the defendant no more than what is embodied in reports and within statements); *United States v. Brennerman*, 818 F. App'x 25, 30 (2d Cir. 2020) (holding that the government was not "under any obligation under the Jencks Act to collect" personal notes prepared by a witness that "were not in the government's possession" at any time).

While the time line was not in the actual possession of the United States, Appellant contends that the time line was in its constructive possession because the CID Investigator, while acting on behalf of the Army, had access to the time line and consciously avoided collecting it. We have not previously addressed whether constructive possession applies to R.C.M. 914.

Federal circuit courts have generally concluded that the Jencks Act applies only to statements possessed by the

prosecutorial arm of the federal government. *See*, e.g., *United States v. Naranjo*, 634 F.3d 1198, 1211–12 (11th Cir. 2011) (holding that a statement is in the possession of the United States for Jencks Act purposes "if it is in the possession of a federal prosecutorial agency" (internal quotation marks omitted) (quoting *United States v. Cagnina*, 697 F.2d 915, 922 (11th Cir. 1983))). The prosecutorial arm of the federal government may, in certain cases, include nonfederal entities when the nonfederal entity is acting in concert or at the behest of the federal government as its agent. *See United States v. Moeckly*, 769 F.2d 453, 463 (8th Cir. 1985) ("The Jencks Act does not apply to statements made to state officials when there is no joint investigation or cooperation with federal authorities." (citations omitted)). Where the statements are physically held by someone other than a federal prosecutorial agency, such statements are generally not considered in the possession of the United States unless the holder serves as "an arm of the United States government." *United States v. Reyeros*, 537 F.3d 270, 285 (3rd Cir. 2008) (holding that Columbian courts holding extradition documents did not serve as an arm of the United States government and therefore the Jencks Act did not apply to such documents).

Consistent with the federal circuit courts, we conclude that R.C.M. 914 applies only to statements possessed by the prosecutorial arm of the federal government or when a nonfederal entity has a joint investigation with the United States. Ultimately, the party in control of the time line was DS—a third-party private citizen—not the United States, and therefore the time line was not subject to R.C.M. 914 production.[1]

Appellant argues that if we do not extend the doctrine of constructive possession to the instant case we allow the Government to avoid the consequences of R.C.M. 914 by failing to take adequate measures to preserve R.C.M. 914 statements. However, in the case Appellant cites for this

---

[1] Having held that the time line was never in the actual or constructive possession of the United States, we need not and do not address whether the time line was a R.C.M. 914 statement or if the good faith loss doctrine applies to these facts.

proposition, *Muwwakkil*, 74 M.J. at 192–93, it was undisputed that the lost Article 32, UCMJ, 10 U.S.C. § 832 (2012), recorded victim testimony had been in the actual possession of the United States before being lost. Thus, we held that the government could not be rewarded for its own negligence in failing to preserve the recording. *Id.* at 193. Here, the Government, unlike in *Muwwakkil*, had no obligation pursuant to R.C.M. 914 to preserve the time line which it never possessed.

Under the circumstances of this case, Appellant's reliance on the doctrine of constructive possession is misplaced. Accordingly, the military judge did not abuse his discretion in ruling that DS's time line was not in the possession of the United States pursuant to R.C.M. 914.

## Decision

The judgment of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge OHLSON, concurring in the result.

Although I concur with the majority's holding that Appellant is not entitled to relief under Rule for Courts-Martial (R.C.M.) 914, I do not agree with their line of reasoning in reaching that result. Specifically, I would hold that DS's time line was a statement and that it was in the possession of the Government under R.C.M. 914, but that Appellant is not entitled to relief because of the good faith loss doctrine. Therefore, I write separately.

## I. Applicable Law

R.C.M. 914(a)(1) requires the government, pursuant to a motion, to produce for the defense any relevant statement of a prosecution witness that is in the possession of the United States. A statement under R.C.M. 914 is defined as follows:

> (1) A written statement made by the witness that is signed *or otherwise adopted or approved by the witness*; [or]

> (2) A substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and contained in stenographic, mechanical, electrical, or other recording or a transcription thereof.

R.C.M. 914(f)(1)-(2) (2016) (emphasis added). Thus, under the provisions of R.C.M. 914 and our case law, in order for a statement to qualify under the rule, (1) the witness must have "made" the statement, (2) the witness must have signed, adopted, or approved the statement, and (3) the statement must relate to the subject matter to which the witness testified. *See United States v. Gonzalez-Melendez*, 594 F.3d 28, 36 (1st Cir. 2010) (defendant not entitled to discover FBI's recording of witness' out-of-court statements because there was no evidence that witness adopted it); *United States v. Oruche*, 484 F.3d 590, 599 (D.C. Cir. 2007) (government was not required to provide irrelevant grand jury testimony of a testifying witness).

In addition to these requirements, the statement also must be within the government's possession. In that regard, this Court has determined that R.C.M. 914 applies "to destroyed or lost statements" previously in the government's

control, and that such lost statements are deemed to be in the government's continuing "possession" for purposes of R.C.M. 914. *United States v. Muwwakkil*, 74 M.J. 187, 192–93 (C.A.A.F. 2015) (describing how the government is implicitly required to take adequate steps to preserve statements). If these requirements are met, then the writing in question is a qualifying statement under R.C.M. 914.

If the government "elects" not to produce a qualifying statement, the military judge "shall order that the testimony of the witness be disregarded by the trier of fact [or] shall declare a mistrial *if* required in the interest of justice." R.C.M. 914(e) (emphasis added). However, as the majority observes, there is a limited "judicially created good faith loss doctrine" that may apply to such situations. *Muwwakkil*, 74 M.J. at 193. Specifically, a military judge may decline to impose sanctions if there is a good faith loss by the government, that is, if the government neither acted in bad faith nor was sufficiently negligent in maintaining possession of the statement. *United States v. Moore*, 452 F.3d 382, 389 (5th Cir. 2006); *see also United States v. Marsh*, 21 M.J. 445, 451–52 (C.M.A. 1986) (stating that "the drastic remedy of striking the testimony" for a violation of the Jencks Act, 18 U.S.C. § 3500(b), may be "required for deliberate suppression or for bad-faith destruction" of statements or for "gross negligence amounting to an election by the prosecution to suppress these materials").

## II. Analysis
### A. The Government Possessed the Time Line

The majority holds that the military judge did not abuse his discretion in concluding that the time line was not in the possession of the Government. In particular, the majority concludes that (1) the CID agent had "no obligation . . . to create an R.C.M. 914 qualifying statement during its interview of DS" and (2) the government cannot constructively possess the statements of a non-informant witness under R.C.M. 914. Although I generally agree with the proposition that the government does not have an affirmative burden to *create* R.C.M. 914 statements, this principle does not apply in the instant case because the Government was offered a statement that

already had been created by the witness.[1] More critically, I firmly disagree with the majority's view that the government cannot constructively possess a statement made by a witness who is not part of the prosecutorial arm of the United States. Instead, I conclude that consistent with the provisions of applicable rules and case law, when a prosecution witness (a) unconditionally offers to a government agent (b) a previously prepared statement (c) that is immediately and easily accessible by the government agent and (d) that is the subject matter of the witness's testimony, then (e) that government agent constructively possesses that statement for the purposes of R.C.M. 914. *See generally United States v. Stellato*, 74 M.J. 473 (C.A.A.F. 2015); *United States v. Muwwakkil*, 74 M.J. 187 (C.A.A.F. 2015).

The majority is correct that the doctrine of constructive possession is usually applied in cases where there is a joint law enforcement investigation between federal and state authorities. *See, e.g.*, *United States v. Naranjo*, 634 F.3d 1198, 1211–13 (11th Cir. 2011); *United States v. Brooks*, 79 M.J. 501, 508–09 (Army Ct. Crim. App. 2019). Further, because a non-informant witness is not a government agent, courts should indeed be circumspect about ruling that the government constructively possessed such a witness's notes because, unlike government agents and informants, cooperating witnesses are not categorically under the control of the government. *See United States v. Reyeros*, 537 F.3d 270, 281–85 (3d Cir. 2008). However, this Court's decision in *Stellato* (albeit in the R.C.M. 701 context) demonstrates that the constructive

---

[1] The majority cites *United States v. Brennerman* for the proposition that the government is not "under any obligation under the Jencks Act to collect" personal notes prepared by a witness that "were not in the government's possession" at any time. 818 F. App'x 25, 30 (2d Cir. 2020). Putting aside that this is an unpublished case, the Second Circuit's analysis of whether the government violated its disclosure obligations hinged on an observation that the government "[was] not aware of the personal notes" and a single citation to another Second Circuit case that determined federal authorities did not possess a local police file because there was no joint federal-state investigation. *Id.* at 30 (citing *United States v. Bermudez*, 526 F.2d 89, 100 n.9 (2d Cir. 1975)). Neither *Brennerman* nor *Bermudez* respond to the facts of this case in a manner that fully supports the majority's view.

possession doctrine can certainly extend to those situations where the government has the ability to control the handling and disposition of evidence in the custody of a cooperating witness. 74 M.J. at 483 (citing *United States v. Muwwakkil*, 74 M.J. 187). As this Court observed in *Stellato*, "the Government need not physically possess an object for it to be within the possession, custody, or control of military authorities." 74 M.J. at 485.

Indeed, my grave concern is that to hold otherwise will incentivize government agents "to avoid the consequences of R.C.M. 914's clear language and intent simply by [purposely] failing to take adequate steps to preserve statements." *Muwwakkil*, 74 MJ at 192. As stated in Appellant's brief, a holding such as the majority's will "encourage law enforcement personnel to intentionally avoid collecting relevant evidence for fear it might not fit the government's theory of the case and [then] they [will] have to disclose [any exculpatory] evidence to the defense." Brief for Appellant at 11, *United States v. Thompson*, No. 21-0111 (C.A.A.F. Mar. 24, 2021)

The majority asserts that the legal issue before us turns on whether the government once actually physically possessed the statement. I am unconvinced. Consider the following scenario: a cooperating government witness repeatedly and unconditionally tries to hand to an investigating agent a written statement that already was prepared by the witness and that is directly relevant to the witness's testimony. However, the agent consistently rebuffs the witness's efforts because the agent is concerned that the statement contains evidence favorable to the defense. The majority would hold that the provisions of R.C.M. 914 would not apply. I wholeheartedly disagree.

Similarly, in the instant case the prosecution witness unconditionally offered the CID agent a previously prepared time line that was directly relevant to her testimony and that was in her pocket. Under these facts, I conclude that the Government constructively possessed DS's statement. As a result, I would hold that the military judge clearly erred in finding that the Government did not possess the time line.

**B. The Time Line Was a Statement**

Because I would find that the time line was in the possession of the Government, I next consider whether the time line was a statement under R.C.M. 914. I would hold that it is. In *United States v. Clark*, we held that this Court adopts an "expansive interpretation of the definition of 'statement.'" 79 M.J. 449, 454 (C.A.A.F. 2020). As the military judge noted, statements under R.C.M. 914 are generally intended to transmit information. *See United States v. Carrasco*, 537 F.2d 372, 375 (9th Cir. 1976). Here, the time line purported to do exactly that: it outlined the history of DS's interactions with Appellant over a six-year period, including incidents that constituted the charged misconduct. These facts are substantively different from those found in *United States v. Ramirez* where the Fifth Circuit concluded that "scattered notes" taken by an informant-witness over the course of the investigation that included "odd pieces of paper on which [the witness] jotted down names, addresses, and license plate numbers" and that were destroyed before the witness testified "do not fit within the [Jencks] Act's purview." 954 F.2d 1035, 1038 (5th Cir. 1992). Therefore, the military judge's finding that the time line was more like notes for recollection rather than a statement under R.C.M. 914 demonstrated an improper understanding of the law and an incorrect application of the facts to the law.[2]

---

[2] As examples, this Court and the CCAs have determined that the following constitute "statements" under the Jencks Act or R.C.M. 914: (1) a law enforcement officer's written notes of his interview with an informant or another witness if the officer is called to testify, *United States v. Jarrie*, 5 M.J. 193, 194 (C.M.A. 1978); *see also Clancy v. United States*, 365 U.S. 312, 315 (1961); *United States v. Jordan*, 316 F.3d 1215, 1253 (11th Cir. 2003); (2) a witness's Article 32, UCMJ, testimony, *Muwwakkil*, 74 M.J. at 192; (3) an audio recording of a witness interview, *Brooks*, 79 M.J. at 506 (citing R.C.M. 914(f)(2)); (4) a tape recording of an officer's interview with a witness after the officer testifies, *United States v. Walbert*, 14 C.M.A. 34, 37, 33 C.M.R. 246, 249 (1963); and (5) agents' statements while interviewing the accused. *Clark*, 79 M.J. at 454. *See also Carrasco*, 537 F.2d at 375–76 (finding a diary of a government informant to be a statement because it consisted of daily entries documenting the events leading up to a narcotics transaction that was signed or initialed on each page by the author as accurate).

The military judge also clearly erred in finding that DS did not adopt or approve the statement. DS created the time line with her mother by selecting the pieces of information from Facebook and the calendar that they presumably believed were accurate and relevant. Further, DS carried the time line with her and offered to hand it over to an investigative agent of the United States government, again evincing her belief that the time line was accurate, relevant, and helpful. *See Carrasco*, 537 F.2d at 375 ("By giving her diary to [the law enforcement agent, the paid government informant] transformed what had been a diary not covered by the Jencks Act into a statement which was.").[3] For these reasons, I conclude that the time line was a statement and the military judge clearly erred in finding otherwise.

### C. Good Faith

Even though I conclude that the military judge erred in finding that the time line was not a statement in the possession of the Government, I would find that the military judge did not abuse his discretion when he concluded that there was "no bad faith or gross negligence" on the part of the Government. *Muwwakkil*, 74 M.J. at 193. Setting aside the issue of what degree of negligence is necessary to conclude that an R.C.M. 914 remedy is appropriate, there is no basis to conclude that the military judge did not properly comprehend the legal question of what constitutes good faith. Further, there is no basis to conclude that the military judge's factual finding was clearly erroneous when he concluded that the CID agent did not engage in bad faith by failing to obtain the time line from DS. At the CID interview when DS offered the time line to the agent, he responded that "he didn't need [it]." *United States v. Thompson*, No. ARMY 20180519, 2020 CCA LEXIS 420 at *4, 2020 WL 6899432 at *2 (Army Ct. Crim. App. Nov. 23, 2020). The agent's decision not to collect the time line is neither inexplicable nor necessarily predicated on bad faith. Because DS and her mother *co*authored the time

---

[3] R.C.M. 914 requirements for determining whether something is a "statement" that was "adopted or approved" by the witness do not revolve around the issue of whether any witness relied on the statement at trial or whether investigators incorporated the statement into their report.

line, the CID agent may have simply been seeking to obtain DS's recollection of events based solely on DS's own memory. The agent also may have determined that the time line's value was negligible: the Government already had access to the calendar and Facebook photographs with time stamps, all of which created their own irrefutable time line.[4] The record, therefore, supports the military judge's determination that there was no bad faith or gross negligence on the part of the Government. Accordingly, the military judge acted in a manner consistent with the good faith loss doctrine when he declined to impose any sanctions on the Government. *Muwwakkil*, 74 M.J. at 193.

## III. Conclusion

Although I conclude that for R.C.M. 914 purposes DS's time line constituted a statement and was in the constructive possession of the Government, I also conclude that the good faith loss doctrine applies in this case such that Appellant is not entitled to relief. Therefore, I vote to affirm the judgment of the Army Court of Criminal Appeals.

---

[4] Defense counsel also had access to the calendar, cross-examining DS on it, and could have gained access to the Facebook photographs but never requested them. Given that the defense made a request only for the time line and did not seek the Facebook photographs, it could be argued "that the purpose of the production request in this case was [not] to use the [time line] for impeachment purposes, but [rather] to prevent [DS] . . . from being able to testify . . . . [If so, t]he Jencks Act is not an appropriate tool for achieving that end." *United States v. Bobadilla-Lopez*, 954 F.2d 519, 523 (9th Cir. 1992).