UNITED STATES, Appellant

v.

Tahir L. MUWWAKKIL, Staff Sergeant
U.S. Army, Appellee

No. 15-0112

Crim. App. No. 20140536

United States Court of Appeals for the Armed Forces

Argued January 27, 2015

Decided May 28, 2015

OHLSON, J., delivered the opinion of the Court, in which BAKER, C.J., and ERDMANN and RYAN, JJ., joined. STUCKY, J., filed a separate opinion concurring in the result.


Counsel

For Appellant: Captain Carrie L. Ward (argued); Colonel John P. Carrell, Lieutenant Colonel James L. Varley, and Captain Janae M. Lepir.

For Appellee: Captain Nicholas J. Larson (argued); Lieutenant Colonel Jonathan F. Potter and Major Aaron R. Inkenbrandt.

Military Judge: Wendy P. Daknis


**This opinion is subject to revision before final publication.**

United States v. Muwwakkil, No. 15-0112/AR

Judge OHLSON delivered the opinion of the Court.

This case arises out of an interlocutory appeal under Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862 (2012), in a pending court-martial.

At trial, the military judge struck the complaining witness's testimony, citing as the basis for her ruling the Government's failure to provide the defense with a recording of the complaining witness's Article 32, UCMJ, 10 U.S.C. § 832 (2012), testimony as required under the Jencks Act, 18 U.S.C. § 3500 (2012), and Rule for Courts-Martial (R.C.M.) 914. After the United States Army Court of Criminal Appeals (CCA) denied the Government's appeal of the military judge's ruling under Article 62, UCMJ, the Judge Advocate General of the Army (TJAG) certified the following two issues for our review under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2012):

> I. WHETHER THE U.S. ARMY COURT OF CRIMINAL APPEALS ERRED IN ITS APPLICATION OF BOTH THE FEDERAL JENCKS ACT (18 U.S.C. § 3500) AND RULE FOR COURTS-MARTIAL 914.

> II. WHETHER THE U.S. ARMY COURT OF CRIMINAL APPEALS ERRED IN ITS DEFERENCE TO THE MILITARY JUDGE'S FINDINGS AND CONCLUSIONS, AS SHE FAILED TO CONSIDER THE TOTALITY OF THE CASE, AND INSTEAD MADE A PRESUMPTION OF HARM BEFORE ORDERING AN EXTRAORDINARY REMEDY. SEE, [E.G.], KILLIAN v. UNITED STATES, 368 U.S. 231 (1961).

We answer these certified issues in the negative by finding that the military judge did not err or otherwise abuse her discretion in applying the provisions of the Jencks Act and

R.C.M. 914 to the instant case.  We therefore affirm the CCA's decision.

## I.  BACKGROUND

Appellee[1] was charged with one specification each of rape and assault consummated by a battery, in violation of Articles 120 and 128, UCMJ, 10 U.S.C. §§ 920, 928 (2012).  GP, the complaining witness in this case, testified at the Article 32, UCMJ, hearing that the accused had raped and assaulted her in July 2013.  Among those in attendance at the Article 32, UCMJ, hearing were the accused, his defense counsel, his counsel's supervisor, and the defense paralegal, as well as the trial counsel and the investigating officer.  GP's Article 32, UCMJ, testimony lasted for approximately two hours and fifteen minutes.

A paralegal working for the Regional Support Legal Office recorded the Article 32, UCMJ, testimony on two devices, one of which malfunctioned partway through the hearing.  The recording from the malfunctioning machine captured fifty-two minutes of GP's direct testimony, but none of her testimony on cross-examination or redirect.  Following the hearing, the Government paralegal used the functioning recorder to summarize in three pages GP's testimony, and then he returned the functioning device to a colleague's desk in the military justice office.

---

[1] Because this is an interlocutory appeal, we will henceforth refer to Appellee as "the accused" in this opinion.

However, at some undetermined point before trial, the recording of GP's testimony from the functioning device was deleted. During motions practice, the paralegal conceded that he failed to appropriately "back up" the recording, and trial counsel stipulated that she did not provide the paralegals in the military justice office with any instruction regarding the handling or preservation of the Article 32, UCMJ, audio in the accused's case.

At the conclusion of the Article 32, UCMJ, hearing, the investigating officer issued a report recommending that the charges not proceed against the accused because of his concerns about GP's credibility. In making this recommendation, the investigating officer specifically cited inconsistencies in GP's testimony and her inability to remember details. Notwithstanding this recommendation, the convening authority referred the charges to a general court-martial, serving the charges on the accused on January 15, 2014.

On or about February 13, 2014, the accused learned that the Government had lost the recording of GP's Article 32, UCMJ, testimony, and on February 16 he sought a continuance of at least three weeks, in part because of the lost recording. Although not part of the record before us, the military judge apparently granted the continuance. On April 25, the accused requested from trial counsel any notes taken by the

investigating officer, the trial counsels, or the Government paralegal in order to mitigate the loss of the recording. However, trial counsel objected to providing these materials on the grounds that (1) the accused had the Article 32, UCMJ, summarized testimony and the investigating officer's report and (2) the Government had no duty to produce the verbatim recording or to mitigate any alleged damage.

Prior to trial, the accused did not take any additional steps in an effort to cure the loss of the Article 32, UCMJ, recording. Instead, after GP testified on direct at the accused's court-martial, the defense moved to strike GP's trial testimony under R.C.M. 914 and the Jencks Act because the Government could not produce the recording of GP's Article 32, UCMJ, testimony. The military judge granted the motion. She concluded that the loss of the Article 32, UCMJ, recorded testimony could only be remedied by striking GP's testimony because: (1) the summarized testimony was "not a substantially verbatim" transcript of GP's Article 32, UCMJ, testimony; (2) the recording was lost due to the Government's negligence, and perhaps, gross negligence; (3) impeachment of GP was the defense's "most important strategy"; (4) GP was "one of two key witnesses" in the case; (5) the investigating officer found GP's testimony to be "inconsistent with previous statements"; and (6) there was no substitute for the Article 32, UCMJ, recording.

United States v. Muwwakkil, No. 15-0112/AR

The military judge also denied the Government's motion for reconsideration.

After the military judge issued her ruling, the Government filed an Article 62, UCMJ, appeal with the CCA arguing that the military judge's decision to strike GP's testimony was unnecessarily severe where there was no explicit finding of gross negligence or prejudice. The lower court determined, however, that the military judge did not abuse her discretion in striking GP's testimony under the Jencks Act and R.C.M. 914, and thus it denied the Government's appeal both initially, United States v. Muwwakkil, 73 M.J. 859, 864 (A. Ct. Crim. App. 2014), and on reconsideration, United States v. Muwwakkil, No. ARMY MISC 20140536 (A. Ct. Crim. App. Sept. 12, 2014). TJAG then certified to this Court the two issues cited above, which we now consider.

## II. Discussion

### A. Certified Issue I

Although the first certified issue refers to the CCA's application of the Jencks Act and R.C.M. 914, the question before us actually involves the decision by the military judge to strike GP's testimony. In circumstances such as these, we deem it appropriate to primarily address the military judge's ruling rather than the CCA's opinion. See United States v. Neal, 68 M.J. 289, 302 (C.A.A.F. 2010).

United States v. Muwwakkil, No. 15-0112/AR

The predecessor to this Court ruled in 1963 that the Jencks Act, applied to courts-martial. See United States v. Walbert, 14 C.M.A. 34, 37, 33 C.M.R. 246, 249 (1963). The Jencks Act requires the military judge, upon motion by the accused, to order the government to disclose prior "statement[s]" of its witnesses that are "relate[d]" to the subject matter of their testimony after each witness testifies on direct examination. See 18 U.S.C. § 3500(b). The Jencks Act is intended "'to further the fair and just administration of criminal justice'" by providing for disclosure of statements for impeaching government witnesses. Goldberg v. United States, 425 U.S. 94, 107 (1976) (quoting Campbell v. United States, 365 U.S. 85, 92 (1961)). At the time of the Walbert decision, there was no provision in the UCMJ or the Manual for Courts-Martial, United States (MCM) similar to the Jencks Act. Thus, the extension of the Jencks Act to military practice was deemed necessary "to ensure that discovery and disclosure procedures in the military justice system, which are designed to be broader than in civilian life, provided the accused, at a minimum, with the disclosure and discovery rights available in federal civilian proceedings." United States v. Williams, 50 M.J. 436, 440 (C.A.A.F. 1999).

In 1984, the President promulgated R.C.M. 914, and this rule "tracks the language of the Jencks Act, but it also

7

includes disclosure of prior statements by defense witnesses other than the accused." United States v. Pena, 22 M.J. 281, 282 n.* (C.M.A. 1986). Both R.C.M. 914 and the Jencks Act afford the defense an opportunity to impeach witnesses and enhance the accuracy of trial proceedings through cross-examination of witnesses. United States v. Lewis, 38 M.J. 501, 508 (A.C.M.R. 1993). Given the similarities in language and purpose between R.C.M. 914 and the Jencks Act, we conclude that our Jencks Act case law and that of the Supreme Court informs our analysis of R.C.M. 914 issues.

We review a military judge's decision to strike testimony under the Jencks Act and R.C.M. 914 using an abuse of discretion standard. See United States v. Augenblick, 393 U.S. 348, 355 (1969); United States v. Longstreath, 45 M.J. 366, 374 (C.A.A.F. 1996) (reviewing military judge's decision on whether to strike testimony under Military Rule of Evidence 301(f)(2) for abuse of discretion); United States v. Cardenas-Mendoza, 579 F.3d 1024, 1031 (9th Cir. 2009) ("A district court's Jencks Act rulings are reviewed for abuse of discretion.").

Turning to that task, we note that for purposes of the accused's case, we are concerned with the following provisions of R.C.M. 914:[2]

---

[2] The Government claims that the Jencks Act is "subsumed" in R.C.M. 914, and its brief therefore focuses on R.C.M. 914. Given the Government's emphasis on R.C.M. 914, our discussion in

(a) <u>Motion for production</u>. After a witness other than the accused has testified on direct examination, the military judge, on motion of a party who did not call the witness, shall order the party who called the witness to produce, for examination and use by the moving party, any statement of the witness that relates to the subject matter concerning which the witness has testified, and that is:

    (1) In the case of a witness called by the trial counsel, in the possession of the United States . . . .

. . . .

(e) <u>Remedy for failure to produce statement</u>. If the other party elects not to comply with an order to deliver a statement to the moving party, the military judge shall order that the testimony of the witness be disregarded by the trier of fact and that the trial proceed, or, if it is the trial counsel who elects not to comply, shall declare a mistrial if required in the interest of justice.

(f) <u>Definition</u>. As used in this rule, a "statement" of a witness means:

. . . .

    (2) A substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and contained in a stenolineart, mechanical, electrical, or other recording or a transcription thereof . . . .

---

the main text likewise will focus on this rule. However, we recognize that Certified Issue I asks whether both R.C.M. 914 and the Jencks Act were properly applied. The R.C.M. 914 provisions at issue in this case track the language of the Jencks Act. <u>Compare</u> R.C.M. 914(a)(1), (e), (f)(2), <u>with</u> 18 U.S.C. § 3500(b), (d), (e)(2). We therefore find that in this case, the result would be the same under both R.C.M. 914 and the Jencks Act. <u>Cf.</u> <u>United States v. Smith</u>, 31 F.3d 1294, 1301 n.6 (4th Cir. 1994) (noting that "the result here would be the same if analyzed under [Fed. R. Crim. P. 26.2] rather than the [Jencks] Act").

United States v. Muwwakkil, No. 15-0112/AR

R.C.M. 914(a)(1), (e), (f)(2).

The Government offers three arguments as to why R.C.M. 914 does not apply to this case: (1) the rules of discovery should have applied; (2) recorded Article 32, UCMJ, testimony should not constitute a "statement"; and (3) trial counsel could not "elect" to decline to produce GP's recorded Article 32, UCMJ, testimony at trial because that recorded testimony was no longer in the possession of the Government.

In regard to the first argument, the Government contends that the accused should have been required to litigate the issue involving the loss of GP's Article 32, UCMJ, testimony as a pretrial discovery matter under R.C.M. 701 and R.C.M. 703(f)(2) rather than as a motion for production under R.C.M. 914. However, we note that the Government did not raise this argument with the military judge, nor did it raise the issue with the CCA until the Government filed its motion for reconsideration -- which the CCA denied. Under the particular circumstances of this case, we decline to entertain this untimely argument in this appeal. See Dep't of Revenue v. Kurth Ranch, 511 U.S. 767, 772 n.9 (1994) ("The issue was not raised below, so we do not address it."); Giordenello v. United States, 357 U.S. 480, 488 (1958) (refusing to entertain government's belated contentions not raised in the lower courts). We therefore find no error in this case stemming from the failure of the military judge and

the CCA to consider the MCM's discovery rules in evaluating the merits of the accused's motion to strike.[3]  As for the Government's two remaining arguments, we are unconvinced that the text of R.C.M. 914 supports them.

As background, we note that R.C.M. 914 was triggered when GP testified on direct examination.  The rule therefore authorized the accused to request GP's "statements" in the Government's "possession."  R.C.M. 914(a)(1); see also 18 U.S.C. § 3500(b).  However, pursuant to its second argument, the Government suggests that R.C.M. 914 does not actually apply in the instant case because recorded Article 32, UCMJ, testimony does not constitute a "statement."  In the course of making this argument, the Government questions the correctness of our conclusion in United States v. Marsh, 21 M.J. 445, 451 (C.M.A.

---

[3] Although we decline to entertain the Government's discovery argument, we briefly address in this footnote the difference between the Jencks Act and R.C.M. 914 with respect to discovery. The Jencks Act's "major concern is with limiting and regulating defense access to government papers." Palermo v. United States, 360 U.S. 343, 354 (1959).  On the other hand, the military justice system affords an accused broad rights and remedies under the discovery provisions of the UCMJ that are more extensive than those afforded in the civilian criminal justice system.  See United States v. Pomarleau, 57 M.J. 351, 359 (C.A.A.F. 2002).  As a result, resort to military discovery procedures "should make resort to [R.C.M. 914] by the defense unnecessary in most cases."  MCM, Analysis of the Rules for Courts-Martial app. 21 at A21-64 (2012 ed.).  Nonetheless, the military's discovery rules do not render R.C.M. 914 meaningless when its terms apply.

1986), that recorded Article 32, UCMJ, testimony constituted a "statement" under the Jencks Act.

In addressing this point, we uphold our decision in Marsh that Article 32, UCMJ, recorded testimony constitutes a statement under the Jencks Act. Further, because our Jencks Act case law informs our R.C.M. 914 analysis, we find that Marsh supports a conclusion that Article 32, UCMJ, recorded testimony also constitutes a "statement" under R.C.M. 914. Moreover, the text of R.C.M. 914 itself indicates that recorded Article 32, UCMJ, testimony constitutes a "statement" because it meets the R.C.M. 914(f)(2) standard of being "[a] substantially verbatim recital of an oral statement . . . that is recorded contemporaneously with the making of the oral statement and contained" in a recording. Therefore, we find that Article 32, UCMJ, recorded testimony qualifies as a "statement" under both the Jencks Act and R.C.M. 914, and we reject the Government's suggestion to the contrary.

In regard to its third argument against the applicability of R.C.M. 914 to the instant case, the Government claims that it was not "in possession" of GP's Article 32, UCMJ, recorded testimony at the time of trial, and thus it made no "election" to disobey the military judge's order to produce it after GP testified on direct examination. See R.C.M. 914(a)(1), (e); see also 18 U.S.C. § 3500(b), (d). However, this reading of R.C.M.

12

914 would effectively render the rule meaningless.  The

Government would be able to avoid the consequences of R.C.M.

914's clear language and intent simply by failing to take

adequate steps to preserve statements.  See United States v.

Sanchez, 635 F.2d 47, 65 (2d Cir. 1980) (explaining Jencks Act's

implicit preservation requirement); United States v. Lieberman,

608 F.2d 889, 895 (1st Cir. 1979) ("Cases under the Jencks Act

have indicated that the Act calls . . . for the preservation of

statements for future disclosure.").  Further, we note that the

Government's strained interpretation of R.C.M. 914 stands in

stark contrast to judicial interpretations of the Jencks Act by

the Supreme Court, our predecessor Court, and the federal

circuit courts, all of which have applied the Jencks Act to

destroyed or lost statements.  See, e.g., Augenblick, 393 U.S.

at 355 (stating that there was "no doubt" that lost "tapes were

covered by the Jencks Act"); Marsh, 21 M.J. at 451; United

States v. Ramirez, 174 F.3d 584, 589 (5th Cir. 1999).  Thus, we

decline to adopt the Government's approach.

Our conclusion on this point is reinforced by the facts in

the instant case.  GP's Article 32, UCMJ, recording was no

longer in the Government's possession solely because of the

Government's own negligence in failing to preserve it.  It would

be an odd result indeed if the Government ultimately was

rewarded for its own negligence.  Cf. Lieberman, 608 F.2d at 897

13

("When all that a witness said was recorded and then wholly or partly destroyed, it was at least once contained in 'statements' 'in the possession of the United States'" (quoting 18 U.S.C. § 3500(e))). We therefore find that the Government's negligent failure to retain control of the recorded Article 32, UCMJ, testimony, which once had been in its exclusive "possession," effectively means that "the trial counsel . . . elect[ed] not to comply" with the requirement under R.C.M. 914(e) to provide a copy of GP's "statement" to the defense.

Under these circumstances and pursuant to R.C.M. 914(e), the military judge was required to impose one of two sanctions on the Government: (1) "order that the testimony of the witness be disregarded by the trier of fact"; or (2) "declare a mistrial if required in the interest of justice." R.C.M. 914(e); see also 18 U.S.C. § 3500(d). The military judge chose the authorized sanction of striking GP's testimony.

In seeking to avoid this sanction, the Government now claims that the military judge needed to find "bad faith" and "prejudice" before striking GP's testimony. We address the "bad faith" argument immediately below and the "prejudice" argument in the second certified issue.

The Jencks Act jurisprudence of the Supreme Court and our Court, which, as we noted above, also guides our analysis of R.C.M. 914, has recognized a judicially created good faith loss

14

doctrine. See Marsh, 21 M.J. at 451 (stating that the "Supreme Court has indicated on several occasions that good-faith loss of [Jencks Act materials] may not require the same sanction required for deliberate suppression or for bad-faith destruction of these materials"). This doctrine excuses the Government's failure to produce "statements" if the loss or destruction of evidence was in good faith. See Killian v. United States, 368 U.S. 231, 242 (1961); see also United States v. Moore, 452 F.3d 382, 389 (5th Cir. 2006) ("Jencks Act sanctions should be imposed in cases of bad faith and negligent suppression of evidence but not in the case of good faith loss by the government."). However, our predecessor Court has recognized that this exception is "generally limited in its application." United States v. Jarrie, 5 M.J. 193, 195 (C.M.A. 1978). Indeed, in the instant case we find that the military judge did not err in declining to apply the good faith loss doctrine because she explicitly found that the Government had engaged in negligent conduct, and a finding of negligence may serve as the basis for a military judge to conclude that the good faith loss doctrine does not apply in a specific case. Cf. Marsh, 21 M.J. at 451-52 (applying the good faith loss doctrine where there was government negligence but also "substantial evidence" establishing (1) an office policy to preserve Article 32, UCMJ, recordings and (2) the steps taken to comply with this policy).

15

Therefore, the military judge did not abuse her discretion in applying the Jencks Act and R.C.M. 914 by striking GP's testimony. Accordingly, we answer the first certified issue in the negative.

    B.  Certified Issue II

    The second certified issue essentially asks this Court to determine whether the military judge merely presumed harm when she struck GP's testimony because of Jencks Act and R.C.M. 914 violations. We initially find that although the military judge did not use the specific term "prejudice" in her findings, she did essentially engage in a prejudice analysis by finding that GP was a key witness with credibility issues and that there was no adequate substitute for GP's recorded Article 32, UCMJ, testimony. See United States v. Riley, 189 F.3d 802, 806-07 (9th Cir. 1999); see also Marsh, 21 M.J. at 452 (finding no error in military judge's decision declining to strike testimony under the Jencks Act where accused was provided a summarized transcript that was "'almost word for word'" of Article 32, UCMJ testimony); cf. Rosenberg v. United States, 360 U.S. 367, 371 (1959) ("[W]hen the very same information was possessed by defendant's counsel as would have been available were error not committed, it would offend common sense and the fair administration of justice to order a new trial.").

United States v. Muwwakkil, No. 15-0112/AR

Moreover, we further conclude that this prejudice analysis was not required under R.C.M. 914. We apply ordinary rules of statutory construction in interpreting R.C.M. 914. See, e.g., United States v. Hunter, 65 M.J. 399, 401 (C.A.A.F. 2008). Specifically, we interpret R.C.M. 914(e) by "look[ing] at 'the plain language of the [MCM] and constru[ing] its provision in terms of its object and policy, as well as the provisions of any related [rules], in order to ascertain the intent of [the President]; if the [MCM] is unclear we look next to the [drafters' analysis].'" United States v. Rendon, 58 M.J. 221, 224 (C.A.A.F. 2003) (alterations in the original) (quoting United States v. Falk, 50 M.J. 385, 390 (C.A.A.F. 1999)). The plain text of R.C.M. 914 provides two remedies for the Government's failure to deliver a "statement" without referencing a predicate finding of prejudice to the accused. Absent any reference to prejudice or harmless error, at this stage of the proceedings we conclude that the military judge was not required to engage in a prejudice analysis.[4] We therefore answer the second certified issue in the negative.

_____

[4] We recognize that in Jencks Act cases, the Supreme Court has returned cases on direct appeal to the trial court to conduct a harmless error analysis. See Goldberg, 425 U.S. at 111-12 & n.21; Killian, 368 U.S. at 244. In both instances, the Supreme Court remanded following a full trial for the trial court to examine whether a Jencks Act violation occurred and if so whether the violation was harmless or warranted a new trial. Goldberg, 425 U.S. at 111-12; Killian, 368 U.S. at 244. These cases are distinguishable from certified interlocutory questions

17

## III. Decision

We conclude that the military judge did not err or otherwise abuse her discretion in applying the provisions of the Jencks Act and R.C.M. 914 to the instant case. Accordingly, we affirm the decision of the United States Army Court of Criminal Appeals.

---

and a situation where a military judge is considering an R.C.M. 914 motion in the midst of a trial.

STUCKY, Judge (concurring in the result):

I agree that the military judge did not abuse her discretion under Rule for Courts-Martial (R.C.M.) 914 in striking the witness's testimony. I disagree, however, with the majority's suggestion that the Jencks Act applies to courts-martial.

In Palermo v. United States, the Supreme Court described the circumstances that led to the enactment of the Jencks Act, 18 U.S.C. § 3500.

> Exercising our power, in the absence of statutory provision, to prescribe procedures for the administration of justice in the federal courts, this Court, on June 3, 1957, in Jencks v. United States, 353 U.S. 657 [1957], decided that the defense in a federal criminal prosecution was entitled, under certain circumstances, to obtain, for impeachment purposes, statements which had been made to government agents by government witnesses. These statements were therefore to be turned over to the defense at the time of cross-examination if their contents related to the subject matter of the witness' direct testimony, and if a demand had been made for specific statements which had been written by the witness or, if orally made, as recorded by agents of the Government. We also held that the trial judge was not to examine the statements to determine if they contained material inconsistent with the testimony of the witness before deciding whether he would turn them over to the defense. Once the statements had been shown to contain related material only the defense was adequately equipped to decide whether they had value for impeachment.

360 U.S. 343, 345–46 (1959).

The decision raised concerns in Congress, and legislation was introduced almost immediately thereafter to limit Jencks.

Id. at 346–47.  Three months later, on September 2, 1957,

Congress approved the Jencks Act, which narrowed the definition

of the term "statements."  Id. at 347.  The Supreme Court

recognized that Congress had the power to define the rules of

trial procedure and, therefore, concluded that the Jencks Act

superseded the rules the Court created in Jencks.  See id. at

347–48, 351.

> The Constitution grants Congress "plenary control
> over rights, duties, and responsibilities in the
> framework of the Military Establishment, including
> regulations, procedures, and remedies related to
> military discipline."  Weiss v. United States, 510
> U.S. 163, 177 (1994); see U.S. Const. art. I, § 8,
> cl. 14.  Congress has exercised its control over
> military discipline through the Uniform Code of
> Military Justice, which "establishes an integrated
> system of investigation, trial, and appeal that is
> separate from the criminal justice proceedings
> conducted in the U.S. district courts."  United States
> v. Dowty, 48 M.J. 102, 106 (1998).

United States v. McElhaney, 54 M.J. 120, 124 (C.A.A.F. 2000).

As part of this integrated system, Congress provided that

the President may prescribe

> [p]retrial, trial, and post-trial procedures,
> including modes of proof, for cases arising under [the
> UCMJ], . . . which shall, so far as he considers
> practicable, apply the principles of law and the rules
> of evidence generally recognized in the trial of
> criminal cases in the United States district courts,
> but which may not be contrary to or inconsistent with
> [the UCMJ].

Article 36(a), UCMJ, 10 U.S.C. § 836(a) (2012).  The President

has exercised that authority by promulgating a procedural rule

governing the production of statements of witnesses for courts-martial.  See R.C.M. 914.  This rule is based on Fed. R. Crim. P. 26.2, which is based on the Jencks Act.  Manual for Courts-Martial, United States, Analysis of R.C.M. 914, at A21-64 (2012 ed.).

Just as the Supreme Court recognized that Congress has the primary responsibility for enacting the rules of procedure in federal criminal trials, this Court should recognize that Congress has explicitly granted the President the authority to promulgate pretrial, trial, and post-trial procedural rules. Thus, I conclude that R.C.M. 914 supersedes the Jencks Act for trials by courts-martial.