*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

## UNITED STATES
Appellee

**v.**

## Leeroy M. SIGRAH, Private
United States Army, Appellant

### No. 21-0325
Crim. App. No. 20190556

Argued May 24, 2022—Decided August 30, 2022

Military Judges: Matthew A. Calarco (arraignment)
and Jacqueline Tubbs (trial)

For Appellant: *Captain David D. Hamstra* (argued); *Colonel Michael C. Friess, Lieutenant Colonel Dale C. McFeatters,* and *Major Christian E. DeLuke* (on brief); *Captain Andrew R. Britt.*

For Appellee: *Captain Rene Tristan C. De Vega* (argued); *Colonel Christopher B. Burgess*, *Lieutenant Colonel Craig J. Schapira,* and *Captain Melissa A. Eisenberg* (on brief).

Judge SPARKS delivered the opinion of the Court, in which Chief Judge OHLSON, Judge MAGGS, Judge HARDY, and Senior Judge EFFRON joined. Chief Judge OHLSON filed a separate concurring opinion, in which Judge MAGGS joined. Judge MAGGS filed a separate concurring opinion, in which Judge HARDY joined.

———————————

Judge SPARKS delivered the opinion of the Court.

Contrary to his pleas, Appellant was convicted at a general court-martial by a panel of officer and enlisted members of sexual assault, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2018). The adjudged and approved sentence provided for a reduction to pay grade E-1, twelve years of confinement, forfeiture of all pay and allowances, and a dishonorable discharge. On appeal to the United States Army Court of Criminal Appeals, Appellant challenged his conviction by arguing that the military judge abused her discretion in denying his motions to strike the testimony of Government

witnesses under Rule for Courts-Martial (R.C.M.) 914. *United States v. Sigrah*, No. ARMY 20190556, 2021 CCA LEXIS 279, at \*10, 2021 WL 2385270, at \*3 (A. Ct. Crim. App. June 9, 2021) (unpublished). R.C.M. 914 requires the government to make available to the defense, after a witness has testified, any statement possessed by the United States that the witness has made. In its opinion, the lower court agreed that the military judge erred in her application of R.C.M. 914. *Id.* at \*13–17, 2021 WL 2385270, at \*4–5. However, after conducting a review of the R.C.M. 914 violation for prejudice, the lower court determined that the error did not substantially influence the findings. *Id.* at \*24, 2021 WL 2385270, at \*7. We granted review to determine whether Appellant was prejudiced by the military judge's erroneous R.C.M. 914 ruling.[1] After review of the record, we conclude that the military judge's error in not striking the relevant testimony pursuant to R.C.M. 914 had a substantial influence on the findings. Consequently, the lower court's decision is reversed and the findings and sentence are set aside.

## I. Background

In its opinion below, the lower court set out the relevant facts and procedural background for resolution of the granted issue:

> In February 2018, the victim, a female Specialist (SPC) in the U.S. Army, spent the evening socializing and consuming alcohol with friends. Following a farewell party, she went to a male friend's, SPC D's, barracks room. Once at SPC D's barracks room, she continued socializing and consuming alcohol with SPC D and two other male soldiers, appellant and SPC B, both of whom she knew. After consuming around seven shots of alcohol at the farewell party and another two beers at SPC D's barracks room, the victim felt very intoxicated and went to sleep alone in SPC D's bed, fully clothed. Her next memory was waking up with her legs spread, her pants and underwear partially removed,

---

[1] We granted review of the following issue:

> Whether the military judge's denial of Appellant's R.C.M. 914 motions materially prejudiced Appellant's substantial rights.

and with a person on top of her. She testified the person on top of her was appellant, based in part on seeing his silhouette and hearing his voice. After pushing appellant off of her, she left SPC D's room and returned to her own room. Once back in her room, the victim cried herself to sleep. The next morning, she woke up with pain in her vaginal area, consistent with sexual intercourse.

Later that day, appellant began sending messages to the victim. In his opening message, he wrote, "I fucked up. U have all the reasons in this world to hate. I'm very sorry. I really am. u don't have to reply. I just wanna say how sorry and stupid I am." (emojis omitted). In another message, appellant wrote, "I feel guilty as fuck." Despite the sheer volume of messages sent to the victim, nowhere did appellant admit to the victim the specifics of what happened in SPC D's bedroom. The victim did not recall being penetrated. Specialist D, however, testified at trial that appellant stated to him that he pulled down the victim's pants and had sex with her.

. . . .

Initially, the victim did not want to report the incident, but chose to do so approximately a week later after talking with friends and upon realizing it was not something she could simply let go. Following the report, Army Criminal Investigation Command (CID) began an investigation. As part of the investigation, CID Special Agent (SA) M, with the assistance of SA P, interviewed the victim, appellant, SPC D, and SPC B. All of the interviews were video recorded and temporarily stored on a CID server. At the relevant time in February 2018, the Fort Campbell CID interview rooms were configured in a manner such that the video-recording feature automatically began whenever someone entered an interview room. In order to record the audio of an interview, however, the interviewing CID agent had to affirmatively press a button to engage the audio recording feature. As SA M testified, "[T]he only button that we have to click is an audio button. So we have the option to turn the audio on and off in the interview rooms, but the video is always recording."

Video recordings of interviews—and the audio recordings of interviews, if the button was pressed—were automatically stored on a CID server with limited storage space. Unless a CID agent accessed the server and affirmatively preserved a specific recording, the recordings were automatically overwritten when the server's storage capacity was reached. According to SA M, it was CID policy at the time to preserve only subject interviews on a physical disc. Depending on the storage capacity of the CID server, non-subject witness interviews would be overwritten approximately thirty to forty-five days after the interview.

In this case, only appellant's CID interview—video and audio—was preserved on a physical disc. The interviews of the victim and SPCs D and B were not affirmatively preserved by CID and, as such, were eventually automatically overwritten. These three recordings contained both audio and video because the audio button was engaged prior to entering the interview rooms. Indeed, SA M testified, "My practice is I always turn the audio on . . .". The victim and SPCs D and B did, however, provide written sworn statements to CID during their interviews, all of which were preserved and disclosed to the defense. The victim wrote a seven-page sworn statement; SPC D wrote a five-page sworn statement; and SPC B wrote a four-page sworn statement. In addition to appellant, SPC D was advised of his Article 31(b), UCMJ, rights prior to his interview and waived his rights. Notwithstanding the rights advisement, SPC D's interview was not affirmatively preserved. According to SA M, SPC D was issued a rights advisement based on guidance SA M received from his supervisors. At the time, however, CID believed appellant was the "suspect subject." Special Agent M testified that the issuance of Article 31(b), UCMJ, rights was not the "threshold that determines if a recording is going to be burned to a disc or not."

. . . .

Following the victim's direct examination, defense counsel moved to strike her testimony under R.C.M. 914 because the government failed to preserve her recorded interview. In support of the motion, defense counsel called SAs M and P, whose testimony is summarized above. The government

offered no evidence, relying solely on argument. Trial counsel acknowledged the victim's recorded interview contained statements and that the government could not produce those statements due to the recording being automatically overwritten. Trial counsel argued that despite the loss of the statements, there was no showing of bad faith on the part of CID and that the defense had access to the victim's sworn statement. During the same Article 39(a), UCMJ, hearing, the defense indicated it would be making the same motion, supported with the same evidence, with respect to the testimony of SPCs D and B. The government maintained its argument concerning the absence of bad faith and the availability of sworn statements as to SPCs D and B. The military judge orally denied defense counsel's R.C.M. 914 motions for all three witnesses and stated she would supplement the record with written findings of fact and conclusions of law.

Following a correction of the record ordered pursuant to R.C.M. 1112(d), the court received the military judge's written R.C.M. 914 ruling. In her ruling, the military judge found that the recorded interviews of the victim and SPCs D and B were "technically . . . recorded statement[s]" that were "deleted/overwritten prior to preferral of charges." However, she concluded there was "no violation of R.C.M. 914 or the Jencks Act." She also found there "was no evidence presented that law enforcement acted in bad faith or in a negligent manner." The military judge further concluded that all three witnesses provided "comprehensive, thorough and detailed" sworn statements and that the statements "constitute[d] an adequate substitute for the deleted video recordings."

*Id.* at *2–9, 2021 WL 2385270, at *1–3 (alterations 2, 3, 5, 6, and 7 in original) (footnote omitted).

On appeal, the lower court concluded that the military judge erred in her application of R.C.M. 914, as the recorded interviews of the victim and SPCs D and B constituted statements. The court further concluded the good faith loss doctrine did not excuse the Government's failure to provide the statements because the recordings were lost due to the

Government's negligence.[2] *Id.* at *13–17, 2021 WL 2385270, at *4–5. Turning to Appellant's claim that he was prejudiced by the military judge's error, the lower court recognized tension in this Court's framework for addressing prejudice under R.C.M. 914. *Id.* at *19, 2021 WL 2385270, at *6. The lower court interpreted this Court's decision in *United States v. Clark*, 79 M.J. 449, 455 (C.A.A.F. 2020), as "explicitly" applying both the *United States v. Kohlbek*, 78 M.J. 326, 333 (C.A.A.F. 2019), and *Rosenberg v. United States*, 360 U.S. 367, 371 (1959), frameworks for determining prejudice under R.C.M. 914. 2021 CCA LEXIS 279, at *21, 2021 WL 2385270, at *7. In the instant case, the lower court found prejudice under the *Kohlbek* framework, but no prejudice under the *Rosenberg* framework. *Id.* at *22–24, 2021 WL 2385270, at *7. Ultimately, the lower court determined that *Rosenberg* was the appropriate framework for addressing prejudice for R.C.M. 914 error. *Id.* at *22–23, 2021 WL 2385270, at *7. Accordingly, the lower court concluded that the military judge's R.C.M. 914 error did not substantially influence the findings. *Id.* at *24, 2021 WL 2385270, at *7.

## II. Discussion

R.C.M. 914(a) states:

> After a witness other than the accused has testified on direct examination, the military judge, on motion of a party who did not call the witness, shall order the party who called the witness to produce, for examination and use by the moving party, any statement of the witness that relates to the subject matter concerning which the witness has testified, and that is:

---

[2] The granted issue does not limit this Court's authority to review whether the military judge abused her discretion by denying the R.C.M. 914 motions. However, the Government concedes that the military judge erred in finding that the lost interviews did not violate R.C.M. 914, and that the Government showed sufficient culpability to preclude the good faith loss doctrine. Because we accept the Government's concessions, this opinion only addresses the granted issue of whether Appellant was prejudiced by the R.C.M. 914 error.

(1) In the case of a witness called by the trial counsel, in the possession of the United States; or

(2) In the case of a witness called by the defense, in the possession of the accused or defense counsel.

The Jencks Act requires a district court judge, upon motion by the defendant, to order the government to disclose prior "statement[s]" of its witnesses that are "relate[d] to the subject matter" of their testimony after each witness testifies on direct examination. 18 U.S.C. § 3500(b). "In 1984, the President promulgated R.C.M. 914, and this rule 'tracks the language of the Jencks Act, but it also includes disclosure of prior statements by defense witnesses other than the accused.'" *United States v. Muwwakkil*, 74 M.J. 187, 190 (C.A.A.F. 2015) (citation omitted). "Given the similarities in language and purpose between R.C.M. 914 and the Jencks Act, we [have] conclude[ed] that our Jencks Act case law and that of the Supreme Court informs our analysis of R.C.M. 914 issues." *Id*. at 191.

At the trial level, if the government, as the opposing party, fails to produce a qualifying statement, R.C.M. 914(e) provides the military judge with two remedies for the government's failure to deliver the qualifying statement: (1) "order that the testimony of the witness be disregarded by the trier of fact" or (2) "declare a mistrial if required in the interest of justice." However, when, as here, the military judge errs in denying a R.C.M. 914 motion, we must determine whether this error prejudiced Appellant. *See* Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2018). The test for prejudice is "based on the nature of the right violated." *Clark*, 79 M.J. at 454 (internal quotation marks omitted) (quoting *United States v. Tovarchavez*, 78 M.J. 458, 465 (C.A.A.F. 2019)). The prejudice standard that we apply depends on whether the defect amounts to a constitutional error or a nonconstitutional error. *Id*. Our review for prejudice is de novo. *Id*. at 455.

In *Clark*, we stated that generally a R.C.M. 914 violation will not rise to a constitutional error. *Id*. at 454. Here, as in *Clark*, given that the victim, SPCs D and B, and the CID agents all testified and were subject to cross-examination, Appellant was not denied his constitutional right to confront

the witnesses against him. The R.C.M. 914 error therefore infringed a procedural right rather than a fundamental constitutional right.

When there is a preserved nonconstitutional error in the application of R.C.M. 914, we must determine if the error had a substantial influence on the findings. *Id.* at 455 (citing *Kohlbek*, 78 M.J. at 333). "In conducting the prejudice analysis, this Court weighs: (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id.* (citations omitted) (internal quotation marks omitted).

In *Clark*, we applied the *Kohlbek* framework and determined that the record contained sufficient evidence for us to conclude that the appellant was not prejudiced by the erroneous R.C.M. 914 trial ruling. *Id.* For further support, we stated that "[a]dditionally, in *Rosenberg v. United States*, the Supreme Court noted that a failure to produce may be held harmless if the defense otherwise had access to the same information." *Id.* (citation omitted). We reasoned in *Clark* that although the appellant did not have the " 'very same information' " that would have been available had the government not lost a portion of the appellant's recorded CID interview, he nevertheless suffered no prejudice because trial defense counsel possessed "sufficient information to cross-examine" the CID agents. *Id.*

In the instant case, the Government argues that the military judge's erroneous R.C.M. 914 ruling did not materially prejudice Appellant's substantial rights because Appellant possessed " 'substantially the same information' " —the witnesses' written sworn statements—as he would have garnered from their recorded interviews. The Government asserts "that the predicate question to determining prejudice related to an R.C.M. 914 violation is whether an appellant possess[es] an adequate substitute for the lost statement?" If so, the Government contends that the error is harmless and the prejudice analysis ends. If not, then the Government argues that appellate courts should apply the *Kohlbek* framework to determine whether the appellant was prejudiced.

Appellant argues that the *Kohlbek* framework provides the initial prejudice analysis for preserved nonconstitutional R.C.M. 914 error. Appellant contends that if the *Kohlbek* test shows an appellant's substantial rights were materially prejudiced—as the lower court found—the R.C.M. 914 prejudice analysis ends and the *Rosenberg* framework does not apply.

In *Clark*, reference to *Rosenberg* was not intended to create a separate prejudice test for R.C.M. 914 violations. Instead, in *Clark*, we cited *Rosenberg* as additional support for our *Kohlbek* prejudice analysis. This type of additional support is permitted for R.C.M. 914 violations. *Muwwakkil*, 74 M.J. at 191. We reiterate today that the *Kohlbek* framework is the appropriate prejudice analysis for preserved nonconstitutional R.C.M. 914 error.

Applying the *Kohlbek* framework, we determine (1) that if the military judge had applied the correct remedy and stricken the testimonies of the victim, SPC D and SPC B, the Government would have had a very weak case; (2) that without these testimonies, Appellant would have had a strong case; (3) that the testimonies were material; and (4) that the testimonies were of high quality. Unlike in *Clark*, had the testimony of the victim and SPCs D and B been struck at trial based on R.C.M. 914, there would have been no independently admissible evidence to prove Appellant's guilt. Considering the other evidence admitted did not establish Appellant's guilt, the testimony of these three witnesses played a major role in the prosecution of Appellant. The Government concedes this point, noting that "[t]here is no doubt that this Court could find material prejudice if it accepts Appellant's invitation to proceed directly from a finding of error to a *Kohlbek* prejudice analysis."[3] We agree. After review of the record, we conclude that the military judge's error in not striking the victim and SPCs D and B testimony pursuant to

---

[3] As indicated above, the lower court also observed, "An exclusive application of the *Kohlbek*[] standard would easily result in a finding of prejudice to appellant." *Sigrah*, 2021 CCA LEXIS 279, at *22, 2021 WL 2385270, at *7.

R.C.M. 914 had a substantial influence on the findings. Accordingly, we reverse.

## III. Decision

The decision of the United States Army Court of Criminal Appeals is reversed, and the findings and sentence are set aside. The record is returned to the Judge Advocate General of the Army. A rehearing may be authorized.

Chief Judge OHLSON, with whom Judge MAGGS joins, concurring.

I join the Court's opinion in full. I am writing separately just to briefly underscore that this is a rule-driven result rather than a constitutionally required result. Therefore, although the current language of Rule for Courts-Martial 914 has compelled us to conclude that the military judge in this case erred in not striking the testimony of the Government witnesses, nothing in our opinion should be construed as precluding the President from amending this language in the future.

Judge MAGGS, with whom Judge HARDY joins, concurring.

The Court holds that if a military judge makes a procedural error in failing to strike testimony as required by Rule for Courts-Martial (R.C.M.) 914(e), an appellate court must test the error for prejudice using the factors identified in *United States v. Kohlbek*, 78 M.J. 326 (C.A.A.F. 2019). Applying the *Kohlbek* factors in this case, the Court further holds that the Appellant suffered material prejudice to his substantial rights. The Court therefore sets aside the findings and sentence in this case. I fully concur in the Court's opinion.

I write separately to identify and discuss what I perceive to be the ultimate cause of the present litigation. Put simply, R.C.M. 914 is ill-suited for handling cases in which the government calls witnesses at trial but cannot provide the witnesses' prior statements to the defense because those prior statements have been lost. Despite inventive judicial efforts to address this issue, and to some extent because of these efforts, confusion and disagreement will likely persist if military judges are expected to continue to apply R.C.M. 914 to cases involving lost records, unless the text of R.C.M. 914 is revised to address the problem of lost records explicitly.[1]

### I. R.C.M 914(a)(1) and (e) and Lost Statements

R.C.M. 914(a)(1) states an important rule that furthers the defense's ability to confront witnesses who testify for the government.[2] After the government has called a witness to testify on direct examination, the defense may ask the military judge to order the government "to produce, for examination and use by the [defense], any statement of the

---

[1] In 2020, the Department of Defense proposed amendments to R.C.M. 914(e) that would address lost records. *See* Dep't of Defense, *Manual for Courts-Martial: Proposed Amendments* Annex § 1(h) (Feb. 11, 2020), https://www.regulations.gov/document/DOD-2020-OS-0013-0001 (last visited Aug. 30, 2022) [hereinafter *DoD Proposed Amendments*]. The President, however, has not yet acted on these proposed amendments.

[2] R.C.M. 914(a)(2) addresses statements made by witnesses called on direct examination by the defense. I address only R.C.M. 914(a)(1) here because the issues in this case involve witnesses called by the Government.

witness that relates to the subject matter concerning which the witness has testified, and that is . . . in the possession of the United States." R.C.M. 914(a)(1). Having access to the prior statements of a witness may aid the defense in calling into question the accuracy or completeness of the witness's testimony.

The consequences are severe if the government chooses to disobey a military judge's order to produce a witness's statements. R.C.M. 914(e) provides that if the government "elects not to comply with an order to deliver a statement to the [defense], the military judge shall order that the testimony of the witness be disregarded by the trier of fact . . . or . . . shall declare a mistrial if required in the interest of justice." Disregarding the entirety of an important witness's testimony might undermine the government's case against the accused.

The texts of R.C.M. 914(a)(1) and (e), however, have an important shortcoming. As written, these provisions are inapt for addressing situations in which the government *formerly possessed* a record of a witness's prior statements but no longer possesses any record of them at the time of trial. The text of R.C.M. 914(a)(1) authorizes the military judge to order the government to produce any statement that "*is . . . in the possession* of the United States"; the rule says nothing about statements that once were in the government's possession but are not currently in its possession. (Emphasis added.) Accordingly, if the government has lost all records of a statement, the text of R.C.M. 914(a) does not expressly authorize the military judge to do anything.[3]

The text of R.C.M. 914(e) has similar limitations. The text expressly provides a remedy if the government "*elects* not to comply with an order to deliver a statement to the [defense]." (Emphasis added.) In cases in which the government has lost statements, the military judge typically does not order the government to produce the statements. There is thus no order for the government to disobey. And even if the military judge

---

[3] The amendments that the Department of Defense has proposed would not alter R.C.M. 914(a) and therefore do not address this issue. *See DoD Proposed Amendments* Annex § 1(h) (amending only R.C.M. 914(e)).

does order the government to produce a statement, if the government is not in possession of the statement, then the government cannot possibly comply. In such a situation, describing the government as *electing* not to comply with the order is inaccurate because an *election* requires making a choice and the government has no choice in the matter.[4]

By pointing out these gaps in the texts of R.C.M. 914(a)(1) and (e), I am not suggesting that, as a matter of policy, the defense should have no remedy if the government loses its records of prior statements of witnesses. On the contrary, as explained above, having the prior statements of witnesses is very important to the defense and in my view the R.C.M. should provide the defense some form of relief if the government, through its own fault, cannot provide them. All that I am saying is that the current texts of R.C.M. 914(a)(1) and (e) do not expressly provide the defense any recourse.

## II. Disagreements in this Case

Two disagreements are central in this case. The ACCA disagreed with the military judge about whether "the Government violated R.C.M. 914." *United States v. Sigrah*, No. ARMY 20190556, 2021 CCA LEXIS 279, at *13, 2021 WL 2385270, at *4 (A. Ct. Crim. App. June 9, 2021) (unpublished). And now this Court disagrees with the ACCA about the appropriate framework for addressing prejudice for an R.C.M. 914 error. In my assessment, both of these disagreements ultimately stem from the difficulty of attempting to apply R.C.M. 914(a)(1) and (e) to cases that involve lost records despite a lack of textual support for doing so.

A. The ACCA's Disagreement with the Military Judge

The military judge saw the Government's lack of possession of the witnesses' statements at the time of Appellant's motion as an obstacle to applying R.C.M. 914(a)(1). The military judge reasoned:

> Although technically a recorded statement of the
> alleged victim, [Specialist D], and [Specialist B]

---

[4] The Department of Defense has proposed a new provision, R.C.M. 914(e)(2), to address situations in which a *"party cannot comply with* [R.C.M. 914] *because the statement is lost." DoD Proposed Amendments* Annex § 1(h).

existed at one time, and were "in the possession of the United States" they were never downloaded onto a DVD or other medium, and all recordings were deleted/overwritten prior to preferral of charges in this case.

The military judge then cited several cases holding that R.C.M. 914 and its federal statutory counterpart, the Jencks Act, 18 U.S.C. § 3500, apply only when a statement *is in the possession* of the government. *See, e.g., United States v. Naranjo*, 634 F.3d 1198, 1212 (11th Cir. 2011) (concluding that no Jencks Act violation occurred because the district court found that the government was not in possession of a report).

The ACCA, in contrast, concluded that R.C.M. 914 did apply and that the Government violated R.C.M. 914 by not producing the witnesses' statements. *Sigrah*, 2021 CCA LEXIS 279, at *13–14, 2021 WL 2385270, at *4. Unlike the military judge, the ACCA did not focus on whether the statements were "in . . . the possession of the United States" at the time of Appellant's motion. Instead, the ACCA reasoned: "Here, because qualifying statements were created, demanded, and not produced, the Government violated R.C.M. 914." *Id.* at *13, 2021 WL 2385270, at *4.

Although the military judge's decision rested on the text of R.C.M. 914(a)(1), the ACCA's decision is consistent with this Court's ruling in *United States v. Muwwakkil*, 74 M.J. 187 (C.A.A.F. 2015). In *Muwwakkil*, this Court rejected the government's argument that R.C.M. 914(a)(1) could not apply to lost statements because such statements were not "in the possession of the Government." *Id.* at 192. Relying more on the purpose of R.C.M. 914(a)(1) than its specific wording, this Court explained: "[The Government's] reading of R.C.M. 914 would effectively render the rule meaningless. The Government would be able to avoid the consequences of R.C.M. 914's clear language and intent simply by failing to take adequate steps to preserve statements." *Id.*

If the parties had called the holding of *Muwwakkil* on this point to the attention of the military judge, I see no reason to doubt that she would have reached a different conclusion. But in the absence of such briefing, I do not find it surprising that a military judge would determine that a rule that expressly applies only to a statement that "is . . . in the possession of

the United States" does not apply to a statement that "is [not]
. . . in the possession of the United States."

### B. This Court's Disagreement with the ACCA

The source of the disagreement between this Court and
the ACCA about the consequences of the military judge's de-
cision not to strike the witnesses' testimony under R.C.M.
914(e) is similar but requires some background to under-
stand. The text of R.C.M. 914(e) requires the military judge
to strike a witness's testimony or declare a mistrial if the gov-
ernment elects not to comply with an order of production. This
provision contains no express exceptions.

This Court, however, has not strictly followed the text of
R.C.M. 914(e) in cases in which the government has lost pos-
session of a witness's statement. On the contrary, in
*Muwwakkil* and prior cases, this Court recognized what it
candidly called "a judicially created good faith loss doctrine."
74 M.J. at 193. The good faith loss doctrine "excuses the Gov-
ernment's failure to produce 'statements' if the loss or de-
struction of evidence was in good faith." *Id.* In other words,
although the text of R.C.M. 914(e) requires a military judge
to strike a witness's testimony or declare a mistrial if the gov-
ernment does not produce a witness's statements, our prece-
dent holds that a military judge cannot strike the testimony
or declare a mistrial if the government acted in good faith.[5]

---

[5] The Department of Defense would replace this judicially cre-
ated exception with one expressed in the text of the rule. Its pro-
posal would place the current text of R.C.M. 914(e) into a newly
created R.C.M. 914(e)(1) and then, in R.C.M. 914(e)(2), it would
state:

> *In the event that the other party cannot comply with
> this rule because the statement is lost, and can prove,
> by a preponderance of evidence, that the loss of the
> witness statement under subsections (a), (b), or (c) of
> this rule was not attributable to bad faith or gross
> negligence, the military judge may exercise the sanc-
> tions set forth in subsection (e)(1) of this rule if—*

> *(A) evidence is of such central importance to an issue
> that it is essential to a fair trial, and*

> *(B) there is no adequate substitute for such evidence.*

In this case, the ACCA held that the judicially created good faith doctrine did not apply.[6] *Sigrah*, 2021 CCA LEXIS 279, at *17, 2021 WL 2385270, at *5. But the ACCA believed that this Court, in cases like *United States v. Marsh*, 21 M.J. 445 (C.M.A. 1986), and *United States v. Clark,* 79 M.J. 449 (C.A.A.F. 2020), has recognized a second judicially created doctrine for R.C.M. 914 and Jencks Act cases—in the form of a harmless error test—and that this second doctrine precluded relief in this case. For example, in *Clark*, this Court stated that if the government is ordered to produce a statement under R.C.M. 914(a)(1), the government's "failure to produce [the statement] may be held harmless if the defense otherwise had access to the same information." 79 M.J. at 455 (citing *Rosenberg v. United States*, 360 U.S. 360, 371 (1959)). The ACCA interpreted this statement, along with statements from similar cases from military and civilian courts, to mean that when the government fails to produce a witness's statements, an appellant is only entitled to relief if the defense counsel's cross-examination of the witnesses was "significantly encumbered." *Sigrah*, 2021 CCA LEXIS 279, at *23, 2021 WL 2385270, at *7 (internal quotation marks omitted) (citation omitted). The ACCA determined that was not the case here.

Today, the Court holds that its statement about harmless error in *Clark* was not intended to create a separate prejudice doctrine for R.C.M. 914. Instead, the Court explains that in *Clark* it merely discussed harmlessness as additional support for its *Kohlbek* prejudice analysis. In this case, that analysis leads to the conclusion that the military judge's decision not to strike the testimony of the witnesses was materially prejudicial and requires reversal.

Although the Court concludes that the ACCA misinterpreted its precedent, the ACCA's reasoning is perhaps not surprising. This Court created one nontextual doctrine limiting R.C.M. 914(e) in cases involving lost statements (i.e., the

---

*DoD Proposed Amendments* Annex § 1(h).

[6] Although the military judge found that there was no evidence of negligence, the ACCA held that this determination was clearly erroneous. *Sigrah*, 2021 CCA LEXIS 279, at *17, 2021 WL 2385270, at *5. This issue is not on appeal before this Court.

good faith exception). Given that judicial creation and the ambiguity of some of this Court's past statements, the ACCA cannot be much faulted for concluding that this Court had created another nontextual doctrine that excused the government from providing witness statements whenever the defense otherwise had access to the same information.[7]

### III. Conclusion

Perhaps this Court's interpretations of R.C.M. 914(a)(1) and (e), although well-intentioned, have been misguided because they have focused on policy considerations rather than the text of the rule. Maybe this Court should have left the policy making to the Department of Defense and the President. But that is not the issue here because neither party has asked us to overrule any precedent. Yet if the kind of litigation that occurred in this case is to be avoided, then R.C.M. 914 should be revised to address expressly what should happen in cases in which the government was in possession of statements but then lost them. If R.C.M. 914(a) should apply in any situations in which the government "is [not] . . . in possession" of a statement, then R.C.M. 914(a) should identify those situations explicitly. And if good faith, harmless error, or other exceptions to R.C.M. 914(e) should exist, then R.C.M. 914(e) should identify such limitations explicitly. In the meantime, efforts to fit the problem of lost statements into the current text of R.C.M. 914(e) are likely to continue to generate the kinds of disagreements that we see in this case.

---

[7] As the text of the Department of Defense proposal quoted above shows, the Department of Defense would not excuse the striking of testimony merely because an adequate substitute exists for lost statements. Instead, it would require a showing of both good faith *and* the lack of an adequate substitute. *DoD Proposed Amendments* Annex § 1(h).