# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, COOPER, and SCHLACK
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist STEVEN A. HOLMES**
**United States Army, Appellant**

ARMY 20240106

Headquarters, 1st Infantry Division and Fort Riley
Steven C. Henricks, Military Judge (arraignment)
Scott A. Oravec, Military Judge (motion)
Gregory R. Bockin, Military Judge (trial)
Colonel Toby N. Curto, Staff Judge Advocate

For Appellant: Major Beau O. Watkins, JA (argued); Colonel Phillip M. Staten, JA; Lieutenant Colonel Autum R. Porter, JA; Major Beau O. Watkins, JA (on brief).

For Appellee: Captain Stewart A. Miller, JA (argued); Colonel Richard E. Gorini, JA; Major Justin L. Talley, JA; Captain Stewart A. Miller, JA (on brief).

10 June 2025

-----------------------------------
SUMMARY DISPOSITION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

COOPER, Judge:

Appellant raises two assignments of error, one of which merits discussion but no relief.[1] Appellant alleges the military judge failed to strike the victim's testimony or declare a mistrial under Rule for Courts-Martial [R.C.M.] 914 after the government lost a recording of the victim's statement to the Army Criminal Investigative Division (CID). While we analyze this claim below, we find no relief is warranted.

---

[1] We have reviewed appellant's other assignment of error as well as the issue personally raised by appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982) and find they warrant neither discussion nor relief.

## BACKGROUND

An enlisted panel, sitting as a general court-martial, convicted appellant, contrary to his pleas, of one specification of domestic violence, one specification of unlawfully carrying a concealed weapon, and one specification of failure to obey a lawful order, in violation of Articles 128b, 114, and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 928b, 914, and 892 [UCMJ]. The military judge sentenced appellant to 45 days of confinement and 30 days of hard labor. The convening authority approved the findings and only so much of the sentence that extended to 45 days of confinement.

In October of 2021, appellant and ▮ met at Fort Riley, Kansas, and after dating for about a month, ▮ moved into appellant's on post residence. On 10 April 2022, ▮ informed appellant she no longer wanted to be together and was moving out. ▮ testified appellant became angry when she told him the relationship was over. Appellant pushed her into a wall as she tried to leave. ▮ testified she ran out of the house and saw appellant following her, carrying a pistol.

▮ initially reported the incident to the Military Police (MP). Based on a separate allegation of sexual assault, the MPs turned the case over to CID. On 15 September 2022, ▮ was interviewed for approximately two hours by CID concerning her allegations of domestic violence and sexual assault, during which an agent took contemporaneous notes. Additionally, the interview was recorded and stored on a standalone computer with CaseCracker software. The computer allowed for storage of interviews, and CID relied on this capability when conducting their investigations.

In the fall of 2022, the standalone computer crashed and over a hundred interviews were lost. The CID agents initiated a standard recovery process and recovered the majority of the interviews. However, some could not be recovered, including ▮'s interview. The CID agents contacted CaseCracker Onyx, the company responsible for the software, for additional recovery assistance to no avail.

Prior to trial, appellant's defense counsel requested a copy of ▮'s interview. The government informed them the interview was lost in the computer crash and could not be recovered. Defense did however receive the CID agent's contemporaneous notes. Defense counsel filed a pretrial motion to abate the proceedings until the government could produce the recording. The military judge denied appellant's motion to abate, ruling that while the government did violate R.C.M. 914, the good faith exception applied as the loss of the recording was not the result of gross negligence or bad faith on the part of CID. Therefore, the military judge determined abatement was not an appropriate remedy for the violation and instead granted defense "substantial leeway" in its cross-examination of ▮

**LAW AND DISCUSSION**

We review a military judge's decision on whether to strike testimony under R.C.M. 914 for an abuse of discretion. *United States v. Clark*, 79 M.J. 449, 453 (C.A.A.F. 2020); *United States v. Muwwakkil*, 74 M.J. 187, 191 (C.A.A.F. 2015). An abuse of discretion occurs when a military judge's findings of fact are clearly erroneous or his conclusions of law are incorrect. *Clark*, 79 M.J. at 453; *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015).

Rule for Courts-Martial 914, at the time of this case, stated: "After a witness other than the accused has testified on direct examination, the military judge, on motion of a party who did not call the witness, shall order the party who called the witness to produce, for examination and use by the moving party, any statement of the witness that relates to the subject matter concerning which the witness has testified." R.C.M. 914(a). The rule provides the military judge with two remedies for the government's failure to deliver the statement in question: 1) strike the testimony of the witness, or 2) "declare a mistrial if required in the interest of justice." R.C.M. 914(e).

Existing case precedent by our superior court has long recognized "a judicially created good faith loss doctrine."[2] *United States v. Sigrah*, 82 M.J. 463, 471 (C.A.A.F. 2022) (quoting *Muwwakkil*, 74 M.J. at 193). "The good faith loss doctrine 'excuses the Government's failure to produce statements if the loss or destruction of evidence was in good faith.'" *Muwwakkil*, 74 M.J. at 193. "[A]lthough the text of R.C.M. 914(e) requires a military judge to strike a witness's testimony or declare a mistrial if the government does not produce a witness's statements, our precedent holds that a military judge cannot strike the testimony or declare a mistrial if the government acted in good faith." *Sigrah*, 82 M.J. at 471(Maggs, concurring) (*see also United States v. Marsh*, 21 M.J. 445, 452 (C.M.A. 1986)).

As the military judge correctly pointed out in his ruling, there is no doubt that R.C.M. 914 was triggered in this case. If ████ testified at trial, the government would be unable to produce the recording, thereby violating the plain language of the rule.

---

[2] The enumerated exceptions in the current version of R.C.M. 914, pursuant to 2023 Amendments to the MCM, did not take effect until 28 July 2023, almost two weeks *after* appellant's arraignment. Executive Order 14103, dated 28 July 2023, states: "Nothing in Annex 1 shall be construed to invalidate any ... trial in which arraignment occurred...begun prior to the date of this order, and any ... trial in which arraignment occurred...may proceed in the same manner and with the same effect as if the Annex 1 amendments had not been prescribed." Exec. Order No. 14103, 88 C.F.R. 50535 (2023). However, insofar as the amendment addresses an exception where the loss is not attributable to bad faith or gross negligence, it is merely a codification of existing case precedent.

However, upon finding the loss of ██'s interview was "not the result of gross negligence" and "the CID agents...were not negligent in the loss of [██'s] interview," the military judge applied the judicially created good faith exception and did not strike the testimony or declare a mistrial.

The crux of the issue before us on appeal is whether the military judge's finding of no negligence by CID, resulting in the applicability of the good faith exception, was an abuse of discretion.

A person is negligent when they fail to act with the standard of care of a reasonable person in a similar situation, while gross negligence is "a conscious, voluntary act or omission in reckless disregard of a legal duty...". *See Black's Law Dictionary* (9th ed.). Therefore, by definition, gross negligence is a heightened level of negligence and implies thoughtless disregard of the consequences and a failure to use even slight care. *See Conway v. O'Brien*, 312 U.S. 492, 495 (1941).

We find the military judge's finding of no negligence in this case and attributing the loss of the interview to "force majeure" to be clearly erroneous.[3] It is foreseeable a standalone computer could crash, and not having a backup to preserve evidence was not objectively reasonable under the circumstances. However, CID's negligence does not amount to the heightened standard of gross negligence.

The CaseCracker system in use on the standalone computer was intended to store interviews without requiring any additional action by CID to preserve the evidence. In this way, appellant's case is distinguishable from *United States v. Sigrah,* where CID knew the interviews would eventually be overwritten if not preserved and took no steps to preserve them. 82 M.J. 463 (where CID knew they had a duty to preserve the recording and failed to take appropriate action, the good faith loss doctrine did not apply). By contrast, in *United States v. Marsh*, after the government lost recordings of witness testimony at an Article 32 preliminary hearing "despite a good-faith effort on its part to preserve these materials," our superior court found that while some negligence may have occurred, "there was no gross negligence amounting to an election by the prosecution to suppress these materials." 21 M.J. at 451-452 (good faith exception applied after the court found no gross negligence).

So too here, CID made a good faith effort to preserve evidence using CaseCracker software on a computer specifically designed to record and store interviews indefinitely, theoretically requiring no additional steps to save them. While computer crashes are foreseeable, CID's lack of a backup mechanism for a

---

[3] "Force Majeure" means "an event or effect that can be neither anticipated nor controlled." *Black's Law Dictionary* (9th ed.)

computer designed to store interviews does not reach a level of "reckless disregard" required for a finding of gross negligence.

Additionally, after the unexpected computer crash occurred, CID took proactive steps to recover all the lost interviews and for the most part, they were successful. When it was discovered ██'s interview was not recovered, CID reached out to CaseCracker for further assistance and were informed the interview was permanently lost. Actions taken by CID both before and after the crash demonstrate this was not an act of reckless disregard. "While some negligence may have occurred...there was no gross negligence." *Id.* at 452.

Finding no gross negligence on the part of the government, we thus find no abuse of discretion by the military judge in applying the good faith loss doctrine and in his remedy for the R.C.M. 914 violation. The military judge granted defense counsel "substantial leeway" in their cross-examination of the victim. Using a summarized transcript of the victim interview provided by CID, defense counsel was able to repeatedly impeach the victim's testimony, diminishing her credibility in front of the panel. Defense counsel's effective cross-examination using the summarized transcript convinces us that he was not "significantly encumbered in his cross-examination...because of the unavailability" of the recorded interview of ██. *Id.*

We conclude the military judge did not err in failing to strike the testimony of ██ or declaring a mistrial.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Senior Judge FLEMING and Judge SCHLACK concur.

FOR THE COURT:

// JAMES W. HERRING, JR.
Clerk of Court

5